IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

PLAINTIFF B, et al.,

    Plaintiffs,

vs.                                        CASE NO. 5:08-cv-79-RS-AK

JOSEPH R. FRANCIS, et al.,

    Defendants.
_____/

## ORDER

Before me are Defendants' Motion to Disqualify or Recuse (Doc. 69) and Defendant's Memorandum in Support of Defendants' Motion to Disqualify or Recuse (Doc. 70).

### I. Background

The motion requests that I disqualify or recuse myself from this case under 28 U.S.C. § 455(a).

Defendants contend that my impartiality in this case might be questioned based on the history of civil and criminal proceedings involving Joseph R. Francis, Mantra's CEO, and a former Girls Gone Wild cameraman over which I have presided. *See Doe v. Francis*, 5:03cv260-RS-WCS, (N.D. Fla. filed October 8, 2003); *United States v. Mantra Films, Inc.*, 5:06cr78-RS, (N.D. Fla. filed September 12, 2006); *United States v. Schmitz*, 5:06cr81-RS, (N.D. Fla. filed September 12,

2006); *Pitts v. Francis*, 5:07cv169-RS (N.D. Fla. filed July 12, 2007).   As grounds for disqualification and/or recusal, Defendants allege that:

    1.   I misused the contempt power;

    2.   I concealed potentially conflicting relationships from adversarial parties and counsel;

    3.   I made various comments to Francis and to Mark Schmitz, a Girls Gone Wild cameraman, at judicial proceedings.   Defendants contend that the comments demonstrate bias an "incurable prejudice" against them.   The comments are set forth and addressed in this opinion;

    4.   I violated Defendants' First Amendment rights by not permitting Francis to question the credibility of a witness in *Doe v. Francis*, 5:03cv260-RS-WCS (N.D. Fla. filed October 8, 2003); and

    5.   I improperly used *ex parte* information, willfully disregarded the law of privilege, and misused information from other cases in *Doe v. Francis*.

## II. Applicable Law

28 U.S.C. § 455(a) requires a federal judge to disqualify himself in any proceeding in which his impartiality might reasonably be questioned.   The relevant inquiry "is not the reality of bias or prejudice but its appearance."   *Liteky v. United States,* 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).   The standard is "whether an objective, fully informed lay observer would entertain significant doubt

about the judge's impartiality." *Thomas v. Tenneco Packaging Co., Inc.,* 293 F.3d 1306, 1329 (11th Cir.2002) (citing *Christo v. Padgett,* 223 F.3d 1324, 1333 (11th Cir.2000)).  In other words, the relevant inquiry is "how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person."  *United States v. Jordan,* 49 F.3d 152, 156 (5th Cir.1995).

Under § 455(a), actual partiality or knowledge of the disqualifying circumstances on the part of the judge is not required.  *United States v. Kelly,* 888 F.2d 732, 744 (11th Cir.1989).  "The duty of recusal applies equally before, during, and after a judicial proceeding, whenever disqualifying circumstances become known to the judge." *Id.*  The general rule is that "a federal judge should reach his own determination [on recusal], without calling upon counsel to express their views."  *Kelly,* 888 F.2d at 745 (emphasis and citations omitted).

However, § 455(a) does **not** require the judge to accept as true all allegations in determining whether a reasonable person would harbor doubts concerning his impartiality.  *United States v. Greenough,* 782 F.2d 1556, 1558 (11th Cir.1986).  For "[i]f a party could force recusal of a judge by factual allegations [alone], the result would be a virtual 'open season' for recusal." *Id.*  A charge of the appearance of partiality must be supported by the facts.  *Id.*

To require recusal under §§ 455(a) or 455(b)(1), the bias or prejudice of a judge must stem from an "extrajudicial source." *Liteky,* 510 U.S. at 555. The alleged bias or prejudice must be personal: it must derive "from something other than that which the judge learned by participating in the case." *United States v. Amedeo*, 487 F.3d 823, 827 (11th Cir. 2007) (quoting *McWhorter v. C. of Birmingham*, 906 F.2d 674, 678 (11th Cir. 1990)). Doubts concerning the propriety of disqualification should be resolved in favor of disqualification. Nevertheless, "a motion for disqualification ordinarily may not be predicated on the judge's rulings in the instant case or in related cases, nor on a demonstrated tendency to rule any particular way, nor on a particular judicial leaning or attitude derived from his experience on the bench." *Phillips v. Joint Legislative Comm. on Performance and Expenditure Review*, 637 F.2d 1014, 1020 (5th Cir. 1981), *In re Walker*, 532 F.3d 1304, 1311 (11th Cir. 2008) ("Adverse rulings are grounds for appeal, but are rarely grounds for recusal . . . ."). "[O]pinions held by judges as a result of what they learned in earlier proceedings" do *not* constitute bias or prejudice. *Liteky,* 510 U.S. at 551. Thus, "[i]t has long been regarded as normal and proper for a judge to sit in the same case upon remand, and to sit in successive trials involving the same defendant." *Id.*

### III. Analysis

*A. Preliminary Statements*

1. In my more than 35-year history as a trial attorney and judge, the pending motion to disqualify, filed by Francis, is the third time (the first two times were by Joe Francis and his related corporate entities in *United States v. Mantra Films, Inc.*, 5:06cr78-RS (N.D. Fla. filed September 11, 2006) and *Pitts v. Francis*, 5:07cv169-RS (N.D. Fla. filed July 12, 2007)) that anyone represented by counsel has ever filed a motion questioning my ethics or moved to disqualify me from presiding over a case. I have never had, nor do I currently harbor, any animosity, bias, or prejudice toward Mantra, Joe Francis, or Girls Gone Wild that would cause me to question my ability to fairly and impartially preside over this case. I have no interest, personally, professionally, or politically, in the outcome of this or any other litigation involving Joe Francis and Girls Gone Wild other than to fulfill my sworn duties under the law. The fact that Defendants have filed a motion to disqualify me from this case does not, in any way, alter my ability to preside fairly, objectively, and impartially over this case.

2. Defendants ignore the most relevant, objective evidence of a reasonable person's perception of my impartiality and lack of bias toward Joe Francis and Girls Gone Wild:

In the proceedings relating to Joe Francis and Girls Gone Wild over which I have presided, Joe Francis and Girls Gone Wild were, at all times, represented by an entourage of private counsel. Defendants cannot therefore complain that they were

not adequately represented in any of the proceedings before me. In each proceeding, counsel for Joe Francis and Girls Gone Wild did not object to; did not appeal; or appealed the rulings and comments of which they now complain and lost. *See Doe v. Francis*, 5:03cv260-RS-WCS (N.D. Fla. 2007), *appeal docketed*, No. 07-11513-C (11th Cir. April 11, 2007) (denying Francis' emergency motion to stay my order finding him in civil contempt and ordering his incarceration); *Doe v. Francis*, 5:03cv260-RS-WCS (N.D. Fla. 2007), *appeal docketed*, No. 07-11513-C (11th Cir. June 4, 2007) (dismissing Francis' appeal for lack of jurisdiction); *Doe v. Francis*, 5:03cv260-RS-WCS (N.D. Fla. 2007), *appeal docketed*, No. 07-11513C (11th Cir. August 1, 2007) (denying Francis' motion to reconsider Eleventh Circuit's order dismissing his appeal for lack of jurisdiction); *United States v. Mantra Films, Inc.*, 240 Fed. Appx. 372, 2007 WL 2509852 (11th Cir. September 6, 2007) (unpublished) (affirming my sentence requiring that Francis personally perform community service on behalf of Mantra Films, Inc., after the corporation pled guilty to having committed federal crimes). Current counsel for Defendants claims that the explanation for the lack of objection is that I am the sole judge within the Panama City Division and that practitioners before me are afraid of angering me. Such argument ignores the fact that most of the myriad of counsel representing Defendants in their multiple lawsuits before me have not been local counsel and do not regularly try cases before me. Rational counsel in such a position would not

fear retribution.

## B.  History

Because the grounds asserted for my disqualification rely on past judicial proceedings unrelated to this case, I find it proper and necessary to revisit those proceedings in order to fully assess the merits of the motion:

### a.  *Doe v. Francis*

The pending motion is not the first time that Girls Gone Wild and its attorneys have made charges of unethical conduct against members of the bar and sought their disqualification.   In *Doe v. Francis*, Case No. 5:03cv260-RS-WCS, Girls Gone Wild and counsel then representing it levied charges of attorney misconduct at and moved to disqualify two experienced attorneys from representing the plaintiffs in that case. *See Doe v. Francis*, Case No. 5:03cv260-RS-WCS (Doc. 123). Plaintiffs' counsel had never before, in their combined 62 years of experience in the practice of law, been accused of ethical wrongdoing by motion filed in a court.   (Hr'g Tr., Doc. 170, p. 21, lines 21-25, p. 22, lines 1-3, p. 124, lines 3-8).

Although the motion to disqualify in *Doe v. Francis* purported to allege instances of attorney misconduct, the bulk of the motion attacked the credibility of the *plaintiffs* instead, a tactic designed to poison the potential jury pool via the public dockets of this Court. (Doc. 153, p. 3 at ¶ 2) (although the motion purported to allege

instances of *attorney* misconduct, Defendants dedicated more than twice the amount of pages devoted to any single allegation of attorney misconduct, to attacking the credibility of the Plaintiffs *themselves*). Exposing the motion in *Doe v. Francis* for what it was – a cheap shot at plaintiffs and their attorneys – I wrote that:

> This Court is presented with a Motion filed by an attorney who accuses experienced members of the bar of wrongdoing; attacks the credibility of the Plaintiffs in a manner that is wholly irrelevant to the Motion; fails to explain and pursue several of the allegations; fails to inquire about and confirm the accuracy of many of his beliefs; calls no witnesses other than himself to support these beliefs; fails to report the alleged misconduct as required by the Florida Rules of Professional Conduct; delays 28 months in raising several of the alleged ethical violations; and requests no relief at the evidentiary hearing other than a "public airing" of his grievances.

(Doc. 153 at 5.) Under the same "reasonable person" standard advocated by Defendants, I note that a reasonable person could well perceive the pending motion requesting my disqualification as simply an attempt by Joe Francis, Girls Gone Wild, and their counsel to broaden the campaign of ethical assaults on members of the bar to now include a member of the judiciary.

### b.  *Pitts v. Francis*

In *Pitts v. Francis*, 5:07cv169-RS, Defendants switched tactics and targeted me with charges of misconduct and moved to disqualify me from presiding over that case (Doc. 11).  In Defendants' motion in *Pitts*, Defendants raised several of the same grounds as he raised here for my recusal.  In my order denying Defendants'

motion (Doc. 27), I exhaustively detailed my reasoning for not recusing myself. I have reviewed my analysis of recusal law in my *Pitts* order, find that it is still sound, and, as a result, incorporate it by reference.

## C.   *The Merits*

### 1. Abuse of Contempt Power

Defendants claim that I coerced Francis into making a settlement in *Doe v. Francis*. Such reliance on a judicial ruling is an improper basis for recusal under Section 455(a) or 455(b)(1), since the bias or prejudice of a judge must stem from an "extrajudicial source." *Liteky,* 510 U.S. at 555. Furthermore, as detailed in my order of December 19, 2007, in *Pitts v. Francis*, I did not require that Joe Francis settle the *Doe* lawsuit; rather, my order unambiguously required that Joe Francis *mediate* his case in good faith after I found him in civil contempt for exploiting a court-ordered mediation proceeding to threaten and abuse the other party in the civil lawsuit.

Assuming that defense counsel misconstrued the order as a requirement to settle, defense counsel did not object to the order; did not seek clarification from me that the order was an order to mediate, not an order to settle; and objectively demonstrated, through conduct, that my order was a requirement to mediate because Francis did, in fact, mediate with a mediator by telephone following the hearing. Had Francis and defense counsel interpreted my order as a requirement to settle,

they presumably would not have made the effort to contact and enter into discussions with a mediator following the hearing.   Based on this overwhelming evidence, I find that a reasonable person would reject Defendants' argument of perceived bias.

When the parties ultimately entered into a settlement agreement, Francis did not file a motion to vacate the settlement on the grounds that it was improperly coerced.   Nor did he contend that I dictated or influenced the terms of the settlement such that it favored the plaintiffs.   For all I know, Francis may have turned out the winner in the settlement that was reached.   Francis ultimately purged his contempt, not because he settled the case, but because the settlement demonstrated that he had finally mediated in good faith.

Defendants further claim that I did not follow the proper procedures of criminal contempt law.   Importantly, no contention was ever made at the time of the criminal contempt proceedings against Joe Francis that I did not follow proper procedures.   In fact, Francis entered a guilty plea to the charges of criminal contempt and never sought review of the criminal contempt sanction (Francis did pursue an interlocutory appeal on my order of civil contempt in *Doe* (Doc. 307) which was denied by the Eleventh Circuit (Doc. 325)). As such, I find this claim of bias to be meritless.

### 2. Court's Failure to Disclose Relationship with Counsel in *Doe*

Defendants claim that I am further biased and should recuse myself from this case because I enjoy a "long-standing professional and personal relationship with Attorney Ross McCloy and several members of his firm, yet failed to disclose that material fact" in *Doe*. While this accusation may have been relevant in any *Doe* appeal, it is not grounds for recusal here. *In re Walker*, 532 F.3d at 1311 ("Adverse rulings are grounds for appeal, but are rarely grounds for recusal . . . .") These allegations of impropriety were not raised by defense counsel in *Doe*. Importantly, one of Defendant's lawyers was local and served in a law firm that had known for years of my prior relationship with McCloy.

To further put to rest this issue, I will repeat what I stated during the hearing on this motion - I do not enjoy a close personal or professional relationship with Ross McCloy and have not had a close relationship with him since we parted ways in July 1991 when I left the law firm that was originally known as Sale, Brown & Smoak.[1] We do not see each other socially or professionally with any regularity. I have been to Ross McCloy's home exactly two times since leaving my old firm – once for a retirement party for a former secretary and once for a wedding reception. While I respect Ross McCloy as an attorney, he and I are not close friends. Such a relationship is not the type that would require recusal. *See Huff v. Standard Life Ins. Co.*, 683 F.2d 1363 (11th Cir. 1983) (finding that judge's previous affiliation with

---

[1] Defendants incorrectly assume that I was affiliated with McCloy in 1992 based on the appellate decision in *Psychiatric Assoc. v. Siegel*, 610 So. 2d 419 (1992) that was published after I left the firm.

party's law firm was insufficient to necessitate recusal).

In the view of Defendants, the fact that I once worked with Ross McCloy is sufficient to generate significant doubt about my impartiality in the mind of an objective, fully informed lay person.  A reasonable person, however, would need more information before making the leap to apparent partiality.  If the reasonable person knew that I had little contact with Ross McCloy since I started my own law practice seventeen years ago and that our parting, while amicable, was not on the best of terms, that person would likely cease to doubt my partiality.

### 3.   Comments made to Francis and Schmitz

Defendants allege that comments made by me in *Doe* and *Pitts* illustrate my personal prejudice against Defendants and merit my recusal.   Again, to require recusal under Section 455(a) or 455(b)(1), the bias or prejudice of a judge must stem from an "extrajudicial source." *Liteky,* 510 U.S. at 555, 114 S.Ct. 1147. Furthermore, "a motion for disqualification ordinarily may not be predicated on the judge's rulings in the instant case or in related cases, nor on a demonstrated tendency to rule any particular way, nor on a particular judicial leaning or attitude derived from his experience on the bench." *Phillips*, 637 F.2d at 1020.   An exception to the general rule that the disqualifying bias must stem from extrajudicial sources is the situation in which "such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party."   *Davis v. Bd. of School Comm'rs*,

517 F.2d 1044, 1051 (5th cir. 1975).  My comments to Defendant Francis and his employee do not reach this standard.  *See United States v. Phillips*, 664 F.2d 971, 1003 (5th Cir. 1981) (discussing the difficulty of reaching this standard); *see also Parliament Ins. Co. v. Hanson*, 676 F.2d 1069, 1075 (5th Cir. 1982). ("At worst, these remarks were off-hand statements by the court in a completely judicial context . . . ."). Again, as detailed in my *Pitts* recusal order, I find that my comments were proper. My comments to both Francis and Schmitz about the seriousness of the offenses to which they had pled guilty were intended to impress upon them the gravity of the federal crime they acknowledged having committed.

As the sentencing judge, it is proper that I appropriately impress upon defendants the seriousness of their offenses. When a defendant has pled guilty to a crime, the constitutional presumption of innocence evaporates.  When I impose sentence, I am then required, by statute, to promote respect for the law; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant.  18 U.S.C. § 3553(a)(2)(A), (B) & (C).  It is also my duty to state in open court the reasons for imposing each particular sentence.  18 U.S.C. § 3553(c).  My conversations with Francis and Schmitz were intended to fulfill my statutory obligations.

### 4. Violation of Defendants' First Amendment Rights

Defendants claim that my misapplication of local and state ethical rules in

*Doe* violated Defendants' First Amendment rights and merits recusal. Again, such reliance on prior judicial action is improper as a basis for a motion to recuse since the bias or prejudice of a judge must stem from an "extrajudicial source." *Liteky,* 510 U.S. at 555. If Defendants felt that its First Amendment rights had been prejudiced by my misapplication of local and state ethical rules in the *Doe* case, it should have appealed on those grounds. *In re Walker*, 532 F.3d at 1311 ("Adverse rulings are grounds for appeal, but are rarely grounds for recusal . . . .").

### 5. My use of *Ex Parte* Information, Willful Disregard of the Law of Privilege, and Misuse of Information in *Doe*

Defendants' final claim lumps together a catch-all group of various alleged wrongdoings that occurred while I presided over *Doe*. As stated above, such reliance on prior judicial action is improper as a basis for a motion to recuse since the bias or prejudice of a judge must stem from an "extrajudicial source." *Liteky,* 510 U.S. at 555. While I disagree that my actions prejudiced Defendants, if Defendants felt that my actions in the *Doe* were improper, it should have raised those issues on appeal. *In re Walker*, 532 F.3d at 1311 ("Adverse rulings are grounds for appeal, but are rarely grounds for recusal . . . .").

### D. *Final Statements*

The law within the courts of this circuit is clear: "[T]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *Carter v. West Publ'g Co.*, 1999 U.S. App.

LEXIS 38480, at *7 (11th Cir. 1999) (*quoting Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987)). "[A] judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation." *United States v. Greenbough*, 782 F.2d 1556, 1558 (11th Cir. 1986); *see also United States v. Cerceda*, 188 F.3d 1291, 1999 WL 716835, at *2 (11th Cir. 1999). *See generally* Richard E. Flamm, Judicial Disqualification § 24.2.2 (1996). Indeed, it is my duty as the sole district judge in the Panama City Division of this Court to preside over the cases that are assigned to me. N.D. Fla. Loc. R. 3.1 ("All civil cases in which venue properly lies in a division of this district, and all criminal cases in which the offense was committed in a division of this district, shall be filed in that division and shall remain pending in that division until final disposition."); Code of Judicial Conduct Canon 3(A)(2) ("A judge should hear and decide matters assigned, unless disqualified.").

When ruling on a motion to disqualify, a judge must be ever cautious of "the need to prevent parties from . . . manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking." *Carter*, 1999 U.S. App. LEXIS 38480 at *7-*8 (*quoting FDIC v. Sweeney*, 136 F.3d 216, 220 (1st Cir. 1998)) (internal quotation marks omitted). The congressional framers of the disqualification statute, § 455(a), cautioned against its misuse:

> [E]ach judge must be alert to avoid the possibility that
> those who would question his impartiality are in fact

> seeking to avoid the consequences of his expected adverse decision. Disqualification must have a *reasonable* basis. Nothing in [the statute] should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not to have to face a judge where there is a reasonable question of impartiality, but they are not *entitled* to a judge of their own choice.

H.R. Rep. No. 93-1453 (1974), reprinted in 1974 U.S.C.C.A.N. 6351, 6355.

To require that judges disqualify themselves unnecessarily is to encourage litigants "to advance speculative and ethereal arguments for recusal and thus arrogate to themselves a veto power over the assignment of judges." *Thomas v. Trustees of Columbia Univ.*, 30 F. Supp. 2d 430, 431 (S.D.N.Y. 1998). As the Seventh Circuit has aptly observed, "A judge who removes himself whenever a party asks is giving that party a free strike, and Congress rejected proposals . . . to allow each party to remove a judge at the party's option." *New York City Housing Dev. Corp. v. Hart*, 796 F.2d 976, 981 (7th Cir. 1986); *see also* H.R. Rep. No. 93-1453 (1974), reprinted in 1974 U.S.C.C.A.N. 6351, 6355.

It is often said that judges must have thick skin. My skin is no different. I do not take personally the charges of ethical misconduct that have been levied at me by Defendants in the media or in the motion. Joe Francis is a litigant in this Court and as such, he is entitled to fair and impartial justice. All requests by Defendants and Plaintiff, like any request submitted by a litigant in a case over which I preside, will

be evaluated on their legal merits, without prejudice or bias.

At the same time, it is my duty to insure that litigants obey the orders of this Court and do not undermine the public's confidence in the integrity and impartiality of the judiciary or the rights of other parties. An independent and honorable judiciary is indispensable to justice in our society. Deference to the judgments and rulings of courts depends upon public trust in the integrity and independence of judges. When a resourceful litigant, without good cause, attempts to extinguish that trust and the rights of other litigants in this Court for improper purposes, justice suffers.

## IV. Conclusion

Defendants' Motion to Disqualify or Recuse (Doc. 69) is **DENIED**.

**ORDERED** on December 16, 2008.

/s/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**