**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

PLAINTIFF B; PLAINTIFF J;
PLAINTIFF S; and PLAINTIFF V,

   Plaintiffs,

vs.           CASE NO. 5:08cv79/RS-AK

JOSEPH R. FRANCIS; MRA HOLDINGS,
LLC; MANTRA FILMS, INC.; and
AERO FALCONS, LLC,

   Defendants.

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO COUNTS I, III, IV AND V OF THE AMENDED COMPLAINT

  Defendants, Joseph R. Francis, MRA Holdings, LLC, Mantra Films, Inc., and Aero Falcons, LLC, by and through their undersigned attorney, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, move this Court to enter summary judgment in favor of Defendants.  There are no genuine issues of material fact as to the scope of the Plaintiffs' conduct which forms the basis of their claim.  Because the Plaintiffs' conduct did not constitute a violation of law, as they claim in Counts I, III, IV and V of the Amended Complaint, summary judgment should be entered for the Defendants as to those counts.

## FACTS

  The original Complaint in this matter was filed on March 20, 2008.  (Doc. 1). The Amended Complaint was filed on June 26, 2008.  (Doc 7)  That is the complaint presently before this Court.  The Amended Complaint contains five counts.  Count I is an action alleging "Sexual Exploitation under Title 18 U.S.C. § 2251." (Doc. 7, p. 10).

Count III is a "Federal RICO Action for Damages and Injunctive Relief under Title U.S.C. § 1962 and § 1964."  (Doc. 7, p. 13).  Count IV is an action "for Damages and Injunctive Relief Under Chapter 772 Florida Statutes," the Florida RICO statute.  (Doc. 7, p. 16).  Count V is an action alleging "Coercion into Prostitution in Violation of § 796.09 Florida Statutes."  (Doc. 7, p. 18).

In order to prove a prima facie case that the Defendants violated RICO or facilitated prostitution, they must show that the Plaintiffs engaged in certain sexual conduct as defined by law.  The depositions of the Plaintiffs have been taken.  Their testimony, as well as that of witnesses, and the admissions of record, show that none of the Plaintiffs engaged in sexually explicit conduct required to prove Counts I, III or IV, and that they were not coerced into prostitution as they claim.  Therefore, summary judgment should be entered for the Defendants as to Counts I, III, IV and V.

<u>Plaintiff J's actions</u>

The only thing that Plaintiff J did which caused her to file this claim was that she "flashed" her breasts at a camera while riding in a vehicle in public.  (See Answer to Requests for Admissions numbered 4, 6 and 7).  Plaintiff J testified that she flashed while a "guy" who was holding a camera came up to their vehicle, which her older sister was driving, and that Plaintiff S also was in the vehicle.  (Doc. 189, Plaintiff J deposition, p. 16, line 4 – p. 18, line 25).  She admitted that she agreed to flash the camera.  (Id.)  She testified:

> So he comes around very quickly.  He wants a better view, I'm assuming. Videotaped her.  And then I – you know, I'm thinking Plaintiff "S" has done it, my sister is here, I might as well do it.

(Doc. 189, Plaintiff J deposition, p. 21, lines 22-25).   Then traffic moved on and the incident was over.  (Doc. 189, Plaintiff J deposition, p. 22, lines 6-14).  Plaintiff J did not know the identity of the person who filmed her and has never been able to determine if the man holding the camera was from Girls Gone Wild.  (Doc. 189, Plaintiff J deposition, p. 28, lines 1-4; Response to Request for Admission number 9).

<u>Plaintiff S's actions</u>

Similarly, the only act upon which Plaintiff S bases her claim was her "flashing" her breasts for a camera while in public and in a vehicle.  (See Responses to Requests for Admissions numbered 5, 7, and 9).   She did not know the identity of the person who filmed her.  (Response to Request for Admission number 11).  Plaintiff S testified that she was in a vehicle with her sisters, including her grown sister Witness 1, the adult in charge, and was encouraged by Witness 1 to flash, when she flashed a cameraman standing outside the vehicle.  (Doc. 189, Plaintiff S deposition, p. 55, line 7 – 10; p. 57, line 12 – p. 58, line 11).   That is all that occurred.

<u>Plaintiff V's actions</u>

Plaintiff V admitted that the only filming of her was of her flashing and that the film was never released.  (Doc. 189, Plaintiff V deposition, p. 21, lines 2-8; Response to Request for Admission number 10).  Plaintiff V testified that she knew about Girls Gone Wild and that they filmed girls "flashing," i.e. exposing their breasts, before she encountered them.  (Doc. 189, Plaintiff V deposition, p. 168, line 19 – p. 169, line 5).  Nevertheless, when she and her friends saw the Girls Gone Wild van, they decided to follow it to a Chevron station.  (Doc. 189, Plaintiff V deposition, p. 162, line 25 – p. 163, line 2; p. 172, lines 12-14).  Plaintiff V was driving.  (Doc. 189, Plaintiff V deposition, p.

172, lines 2-3).  She admitted that she was not compelled to follow, but could have left the area.  (Doc. 189, Plaintiff V deposition, p. 205, lines 3-6).

This was not Plaintiff V's first time flashing.  (See Response to Request for Admission number 20).  She had flashed once or twice before.  (Doc. 189, Plaintiff V deposition, p. 173, line 15-18).  Once she flashed on the beach and once while driving.  (Doc. 189, Plaintiff V deposition, p. 172, lines 21-23).  She testified that she thought flashing was "funny."  (Doc. 189, Plaintiff V deposition, p. 175, lines 18- p. 176, line 3).  She testified that her flashing was not sexual in nature.  (Doc. 189, Plaintiff V deposition, p. 177, line 25 – p. 178, line 4).

There was no distribution of any video of Plaintiff V.  (Doc. 189, Plaintiff V deposition, p. 21, lines 2-8; Response to Request for Admission number 10).  Thus, her claim includes completely separate allegations.  She alleges that she was coerced into performing a sexual act, although her testimony and actions of that evening contradict the allegation of coercion.

Plaintiff V followed the Girls Gone Wild crew into a hotel room.  (Doc. 189, Plaintiff V deposition, p. 208, lines 9-13).  The only "coercion" to which Plaintiff V could testify with regard to going to the hotel room was that "they were telling us, you know, come on and to follow them."  (Doc. 189, Plaintiff V deposition, p. 209, lines 7-8).  Her only reason for staying at the hotel was that two of her friends were there.  (Doc. 189, Plaintiff V deposition, p. 210, lines 18-20; p. 257, lines 23-24).

She claimed to have gone into a room with Joseph Francis and touched his penis, but did not "jack him off."  (Doc. 189, Plaintiff V deposition, p. 262, lines 20-22).  She testified, "He had my hand and was doing it to himself."  (Doc. 189, Plaintiff V

deposition, p. 263, lines 12-13).     Although Plaintiff V took $100.00 after this incident, there is no evidence that she touched anyone or engaged in any act in order to obtain that money.  (Doc. 189, Plaintiff V deposition, p. 265, lines 3 – 4).   Plaintiff V admitted that she was not threatened in any way by the Defendants if she did not go to the hotel room or engage in the conduct at issue in this matter although she felt "intimated." (Responses to Requests for Admissions number 18 and 19).

There is no evidence that she was forced to go to the hotel or was unable to get up and walk out of the hotel room.  She chose not to.  Indeed, despite her claim of coercion, she admitted that after the incident in the hotel room, she not only took a car ride with Mr. Francis, but also showed him where she lived, and attempted to contact him on a later date.  (Responses to Requests for Admissions numbered 15, 16, 17).

<u>Plaintiff B's actions</u>

At her deposition, Plaintiff B testified that she did not remember what happened on the evening that she was videotaped.  (Doc. 189, Plaintiff B deposition, p. 89, lines 15-18).  She knew that a young lady named Witness 2 was with her.  (Doc. 189, Plaintiff B deposition, p. 92, lines 3-7).  She vaguely remembered being in a hotel room, but that it was all a big haze.  (Doc. 189, Plaintiff B deposition, p. 79, lines 8-15).  She did not feel threatened while there.  (Doc. 189, Plaintiff B deposition, p. 80, line 1).  To date, she has never seen the video or been able to describe what occurred[1].

Witness 2 provided a statement on April 24, 2003, concerning the events about which Plaintiff B complains.  That statement was attached as Exhibit "F" to Plaintiff B's

---

[1] Although the Court denied the Plaintiffs' Motion for Protective Order, Plaintiff B refused to view the video at her continued deposition.

deposition.  When asked about Witness 2's statement, Plaintiff B testified that she had no reason to question it.  (Doc. 189, Plaintiff B deposition, p. 108, lines 11-12).

Witness 2 testified that neither she nor Plaintiff "B" told the person videotaping them that they were 17.  (Doc. 189, Exhibit "F" to Plaintiff "B" deposition, p. 5 of statement).  She stated that they did not have oral sex, but simulated it.  (Doc. 189, Exhibit "F" to Plaintiff "B" deposition, p. 5 of statement):

> Q.  While you were in the bedroom with Plaintiff B, how far did ya'll go?
> A.  Um … well, we did rub each other, we did do that, but we did not have oral sex and that's what, um, the tape showed.  I mean, what it looks like.  He told her that she had to put her head down on me and she just, she didn't do anything it just looks like she did;

Witness 2 went on to testify that she was asked to take off her clothes and she agreed to do so.  She testified that after they were filmed, she and Plaintiff B received $200.00 for their performance.  (Doc. 189, Exhibit "F" to Plaintiff "B" deposition.)  That appears to be the extent of what occurred to Plaintiff B.  There is no evidence that they were forced into the hotel or forced to perform.

## ARGUMENT

The only thing filmed of Plaintiffs J, S and V was their voluntarily exposing their breasts.  Exposure of breasts does not constitute sexually explicit conduct.  *Lane v. MRA Holdings, Inc.¸* 242 F. Supp. 2d 1205, 1216, n. 42 (M.D. Fla. 2000).  There was no videotaping of the actions about which Plaintiff V complains, and thus no claim for sexual exploitation of a minor with intent to videotape her.  Only Plaintiff B might be able to maintain a cause of action under Counts I, III or IV of the Amended Complaint.  Further, it is clear that Plaintiffs J and S did not engage in prostitution.  Flashing breasts in public is not prostitution.  As noted below, the definition of prostitution and coercion

are specific, and not only do the claims of Plaintiffs J and S fail, but also those of Plaintiffs V and B because they were not coerced into prostitution.

      1.      <u>Counts I and III, and IV fail for lack of "sexually explicit conduct."</u>

Count I of the Amended Complaint alleges the Defendants violated 18 U.S.C. § 2251, which prohibits persuading, enticing or coercing a minor to engage in "sexually explicit conduct" with the intent of distributing images of that conduct.  18 U.S.C. § 2251 (2009).  Count III alleges that the Defendants violated RICO because they violated 18 U.S.C. §§ 2251 and 2252.

The prohibitions in 18 U.S.C. §§ 2251 and 2252 pertain to "sexually explicit conduct."  "Sexually explicit conduct" is defined in 18 U.S.C. § 2256 as:

> "sexually explicit conduct" means actual or simulated—
> **(i)** sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
> **(ii)** bestiality;
> **(iii)** masturbation;
> **(iv)** sadistic or masochistic abuse; or
> **(v)** lascivious exhibition of the genitals or pubic area of any person;

Flashing breasts does not constitute sexually explicit conduct.  *Lane v. MRA Holdings, Inc.*¸ 242 F. Supp. 2d 1205, 1216, n. 42 (M.D. Fla. 2000).  Thus, flashing breasts does not result in a violation of 18 U.S.C. §§ 2251 and 2252.

In a factually similar case, *Breitfeller v. Playboy Entertainment Group, Inc.*, 2005 U.S. Dist. LEXIS 23124 (M.D. Fla. 2005), the plaintiffs were minors who appeared in a "wet T-shirt" contest in Florida.  While participating in the contest, the plaintiffs exposed their breasts, buttocks and pubic areas.  The plaintiffs were videotaped doing this, and the defendants who taped them then placed the images on the internet and sold the footage to Playboy.  Playboy, in turn, aired it on their channel even after Playboy learned that the participants were minors.  *Id.*

The plaintiffs in *Breitfeller* sued the persons and companies that videotaped them and distributed and aired the videos.  Counts I and II in the *Breitfeller* action alleged that the defendants violated Florida's RICO statute, Fla. Stat. § 772.103.  Specifically, the plaintiffs alleged that the defendants violated Fla. Stat. § 827.071, the same violation that Plaintiffs have alleged in Count IV of the Amended Complaint instant case.  (Doc. 7).

Fla. Stat. § 827.071 makes it unlawful to promote a sexual performance by a minor.  Count IV in the *Breitfeller* case alleged that the defendants had violated the federal RICO statute by violating 18 U.S.C. §§ 2251 and 2252.  Likewise, in the instant case, the Plaintiffs have alleged that the Defendants are liable under the federal RICO statute for violating 18 U.S.C. §§ 2251 and 2252. (Doc. 7, Count III).

In response to the allegations, the defendants in *Breitfeller* moved to dismiss the claim.  The case was dismissed as to the defendants who filmed the women.[2]  The basis for dismissal of the Florida RICO charge was the finding that the plaintiffs had not engaged in sexual conduct as defined by Florida law.  The basis for dismissal of the federal RICO charge was the finding that the plaintiffs had not engaged in sexually explicit conduct, and that the defendants who filmed the plaintiffs did not have knowledge of their age.

*Brietfeller*'s companion case, *Tilton v. Playboy* was decided by the Eleventh Circuit Court of Appeals.  As in the instant case, the Plaintiff Tilton sued Playboy and other defendants alleging they violated 18 U.S.C. §§ 2251 and 2252.  *Tilton v. Playboy*, 554 F.3d 1371, 1375 (11th Cir. 2009).  Tilton claimed the defendants violated those statutes because she was a minor when they filmed her in a wet T shirt contest and other

---

[2] The court in *Breitfeller* did not dismiss the claim against Playboy because Playboy had knowledge that the plaintiffs were minors before they published the videos.

sexually charged contests such as 'banana sucking,' 'muff eating' and a 'sexual positions' contests, then distributed the films.  *Id.* at 1374-75.  The Eleventh Circuit Court of Appeals affirmed the district court's granting of summary judgment to the defendants, noting that "Tilton has not produced any evidence that she engaged in sexually explicit conduct."  *Id.* at 1375.

The court held that none of Tilton's actions constituted real or simulated sexual conduct as defined in 18 U.S.C. § 2256.  *Id.* at 1376.  "Tilton's conduct must have created the realistic impression of an actual sex act to constitute simulated sexual intercourse."  *Id.* at 1376.  In coming to that conclusion, the court considered the following facts as indicative that both the plaintiff and her male counterpart wore bathing suits that covered their genitalia at the time of the alleged simulation.  *Id.* at 1376.  The Court also noted that there was no evidence that the plaintiff was induced to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct. *Id.* at 1376.  Similarly, there is not evidence in the instant case of inducement.

In this case, the facts show that Plaintiffs J and S voluntarily flashed their breasts. This is not even close to engaging in or simulating a sexual act as require to maintain an action under 18 U.S.C. §§ 2251 or 2252.  *Tilton v. Playboy*, 554 F.3d 1371 (11th Cir. 2009); *Breitfeller v. Playboy Entertainment Group, Inc.*, 2005 U.S. Dist. LEXIS 23124 (M.D. Fla. 2005); *Lane v. MRA Holdings, Inc.*¸ 242 F. Supp. 2d 1205, 1216, n. 42 (M.D. Fla. 2000).  There are no set of facts under which Plaintiffs J or S could present a prima facie case under Counts I and III of the Amended Complaint.  Summary judgment should be entered for the Defendants as to those counts.

Further, Plaintiff B's conduct does not constitute a violation of 18 U.S.C. § 2251. As noted above, the prohibitions in 18 U.S.C. §§ 2251 and 2252 pertain to "sexually explicit conduct."  "Sexually explicit conduct" is defined in 18 U.S.C. § 2256 as:

> "sexually explicit conduct" means actual or simulated—
> **(i)** sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
> **(ii)** bestiality;
> **(iii)** masturbation;
> **(iv)** sadistic or masochistic abuse; or
> **(v)** lascivious exhibition of the genitals or pubic area of any person:

Plaintiff B has absolutely no personal knowledge to attest that she engaged in any of the foregoing actions.  According to Witness 2, there was no actual sex act, they merely made it look like oral sex for the camera.  That is not "sexually explicit conduct" as defined by 18 U.S.C. § 2256, and thus there could be no violation of sections 2251 or 2252 to support Plaintiff B's claim in Counts I and III.  Accordingly, summary judgment should be entered for the Defendants as to those counts.

Finally, as to Plaintiff V, there is absolutely no claim of any violation of 18 U.S.C. §§ 2251 or 2252 as alleged.  The only filming of her, by her own admission, was of her flashing.  Thus, like Plaintiff J and S, under *Lane, Breitfeller* and *Titlon*, supra, she did not engage in sexually explicit conduct and cannot present a prima facie case under Counts I and III.  Further, she has no claim under Counts I or III with regard to her alleged actions in the hotel room.  This was never videotaped.  There is no evidence of any intent or attempt to videotape.  18 U.S.C. § 2251 prohibits sexual exploitation "for the purpose of producing any visual depiction."  18 U.S.C. § 2251 (2009).  There was no such purpose.  In order to violate 18 U.S.C. § 2252, the defendant must transmit "visual depictions."  18 U.S.C. § 2252 (2009).  Again, this was never done – even with regard to

the film of her flashing.  Thus, Plaintiff V cannot present a prima facie case under Counts I and III of the Amended Complaint.

2.  <u>Count IV fails for lack of "sexual conduct" or "sexual performance."</u>

Count IV of the Amended Complaint seeks damages and injunctive relief under Florida Statutes Chapter 772.  Fla. Stat. § 772.104 allows a plaintiff to recover damages if they prove by clear and convincing evidence that they have been "injured by reason of any violation of the provisions of s. 772.103."

Fla. Stat. § 772.103 is Florida's RICO statute.  It provides:

772.103  Prohibited activities.--It is unlawful for any person:

(1)  Who has with criminal intent received any proceeds derived, directly or indirectly, from a pattern of criminal activity or through the collection of an unlawful debt to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise.

(2)  Through a pattern of criminal activity or through the collection of an unlawful debt, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property.

(3)  Employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity or the collection of an unlawful debt.

(4)  To conspire or endeavor to violate any of the provisions of subsection (1), subsection (2), or subsection (3).

Criminal activity is defined in Fla. Stat. § 772.102.  Criminal activity includes the crimes of engaging a minor in prostitution in violation of Fla. Stat. § 796.03, and the crime of commercial sexual exploitation of children in violation of Fla. Sat. § 827.071.  Fla. Stat. § 772.102 (2008).  Those are the substantive predicate crimes which the

Plaintiffs accuse the Defendants of committing.[3]  (Doc. 7).  As explained below, none of the Plaintiffs' actions can support these allegations.

Fla. Stat. § 827.071 prohibits sexual performance by a child.   However, § 827.071,

> requires not merely nudity but depictions or representations of actual sexual intercourse, deviate sexual acts, bestiality, masturbation, sadomasochism, "lewd" exhibition of the genitals, the touching of a person's clothed or unclothed privates or buttocks or actual or simulated sexual battery.

*Schmitt v. State of Florida*, 590 So. 2d 404, 410 (Fla. 1991).  Non-obscene nudity in film "is a protected form of expression under the first amendment."  *Id.* at 409.  "[N]udity alone does not constitute sexual conduct."  *State of Florida v. Pasko*, 815 So. 2d 680, 681 (Fla. 2nd DCA 2002).

Exposure of breasts does not constitute sexual conduct or sexual performance under Fla. Stat. § 827.071.  *Lane v. MRA Holdings, Inc.*, 242 F. Supp. 2d 1205, 1216, n. 42 (M.D. Fla. 2000) (citing *State v.Pasko,* supra).

In order for a plaintiff to prove that a defendant violated Fla. Stat. § 827.071 and therefore violated Florida's RICO statute, Chapter 772, the plaintiff must prove the elements of Fla. Stat. § 827.071.  Fla. Stat. § 827.071(3), which the Plaintiffs in the instant case alleged, prohibits sexual performance by a child.  "Sexual performance" is defined in Fla. Stat. § 827.071(1)(h) as "performance or part thereof which includes sexual conduct by a child less than 18 years of age."  "Sexual conduct" is defined in Fla. Stat. § 827.071(1)(g) as:

> (g) "Sexual conduct" means actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, or

---

[3] Fla. Stat. § 777.011 also is cited in Count IV, but it is not substantive.  It merely defines a principal in first degree as opposed to an accessory.

sadomasochistic abuse; actual lewd exhibition of the genitals; actual physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or, if such person is a female, breast, with the intent to arouse or gratify the sexual desire of either party; or any act or conduct which constitutes sexual battery or simulates that sexual battery is being or will be committed.

As noted above, in *Breitfeller v. Playboy Entertainment Group, Inc.*, 2005 U.S. Dist. LEXIS 23124 (M.D. Fla. 2005), the court held that exposure of breasts, buttock and pubic areas does not constitute a violation of Fla. Stat. § 827.071 because it is not "sexual conduct," and therefore is not a violation of Florida's RICO act.  Plaintiffs J and S merely flashed cameras in public.  They did not engage in sexual conduct.  Pursuant to *Lane* and *Breitfeller*, they have no facts to support Count IV.

> Counts IV and V fail because there was no coercion into prostitution.

As part of Count IV, the Plaintiffs have alleged that the Defendants violated Florida's RICO statute by coercing the Plaintiffs into prostitution.  Count V duplicatively alleges coercion into prostitution in violation of Fla. Stat. § 796.09.  As argued below, not only is there insufficient evidence to present this claim, but Fla. Stat. § 796.09 does not provide a cause of action under the facts of this case.

Florida Statutes, Section 796.09(2) states that prostitution as used in § 796.09 is defined by Fla. Stat. § 796.07.   Section 796.07 provides:

**796.07  Prohibiting prostitution, etc.; evidence; penalties; definitions.**

(1)	As used in this section:

(a)	"Prostitution" means the giving or receiving of the body for sexual activity for hire but excludes sexual activity between spouses.

***

(d)	"Sexual activity" means oral, anal, or vaginal penetration by, or union with, the sexual organ of another; anal or vaginal penetration of another by any other object; or the handling or fondling of the sexual

organ of another for the purpose of masturbation; however, the term
does not include acts done for bona fide medical purposes.

Plaintiffs J and S merely flashed their breasts.  That does not constitute "sexual activity" as defined above.  Therefore, they cannot prove any violation of Fla. Stat. § 796.07 and summary judgment should be entered for the Defendants.  Plaintiff B has no personal knowledge of what occurred that caused her to file this action.  Thus, she cannot testify to having engaged in "sexual activity" as defined above.  Witness 2 testified that there was no actual sexual contact, but merely a simulation of sexual contact.  If the legislature intended for simulated sex acts to be included within the purview of the statute, they would have so stated, as they did in Fla. Stat. § 827.071.  Further, it is self-evident why simulated acts are not included.  Fla. Stat. § 796.07 seeks to stop prostitution, which is the giving of an actual act in return for compensation.  If prostitutes only simulated acts, they would not be engaging in the crime of prostitution.

There is no evidence that any of the Defendants hired Plaintiffs B, J or S to engage in sexual activity.  Plaintiff B did not provide any sexual contact to any of the Defendants, has no proof of being hired to do so.  Witness 2 never hired her for sexual activity.  The interaction between them was conducted voluntarily without providing a sexual service for pay as the statute envisions.

Plaintiff V's actions also did not constitute "sexual activity."  She testified that she did not touch Mr. Francis' penis.  She testified that he was taking all the action, but just holding her hand.  Thus, she did not handle or fondle him as required to prove "sexual activity."

The purpose of Fla. Stat. § 796.09 is "to encourage prostitutes to sue their pimps." *Balas v. Ruzzo*, 1997 Fla. App. LEXIS 11860 (5th DCA 1997); *rev. den.* 719 So. 2d. 286

(Fla. 1998).   The passage of the statute was designed to address the victimization

professional prostitutes suffer at the hand of their pimps and to remedy the fact that

prostitutes often suffer the consequences of prosecution while their pimps and "johns" do

not.   *Id.*   Fla. Stat. § 796.09 was not designed and does not create a cause of action for

young women to sue someone who they believe may have victimized them because they

were videotaped while flashing or voluntarily *simulating* sexual acts.   Thus, the Plaintiffs

do not have a valid claim under Count V.

In addition, there is no evidence of coercion as required to prove a cause of action
under the statute.   "Coercion" for purposes of Fla. Stat. § 796.07 is defined in Fla. Stat. §
796.09:

3)      As used in this section, the term "coercion" means any practice of
domination, restraint, or inducement for the purpose of or with the
reasonably foreseeable effect of causing another person to engage
in or remain in prostitution or to relinquish earnings derived from
prostitution, and includes, but is not limited to:

(a)      Physical force or threats of physical force.

(b)      Physical or mental torture.

(c)      Kidnapping.

(d)      Blackmail.

(e)      Extortion or claims of indebtedness.

(f)      Threat of legal complaint or report of delinquency.

(g)      Threat to interfere with parental rights or responsibilities, whether
by judicial or administrative action or otherwise.

(h)      Promise of legal benefit.

(i)      Promise of greater financial rewards.

(j)      Promise of marriage.

(k)      Restraint of speech or communication with others.

(l)      Exploitation of a condition of developmental disability, cognitive limitation, affective disorder, or substance dependency.

(m)     Exploitation of victimization by sexual abuse.

(n)     Exploitation of pornographic performance.

(o)     Exploitation of human needs for food, shelter, safety, or affection.

The only action which the Plaintiffs may allege as coercion is the possibility of financial gain.  Neither Plaintiff J nor Plaintiff S have provided any evidence of flashing in order to obtain "financial gain."  Even if they obtained a T-shirt or something else for flashing, there is no evidence that they negotiated getting anything in return for flashing. Also, there is no evidence that Plaintiff B bartered for money prior to exhibiting herself. She has no memory of the evening.  According to Witness 2, they went to the hotel room in the hope of obtaining alcohol, and received money after being on camera, but there is no evidence of a person paying Plaintiff B to engage in a sexual act with them, or evidence of Plaintiff B being coerced to disrobe and appear on camera.  They may have been encouraged, but were not coerced, and no criminal charges have been filed against any of the Defendants for coercing them into prostitution.

"A free will decision, even if based on a hope of financial gain, is the opposite of coercion."  *Balas v. Ruzzo*, supra.  If it were, "then anyone who makes a voluntary and reasoned exercise of free will motivated by the hope of economic gain has been coerced." *Id.*  In order for coercion to exist, the promise of reward must be so great as to overcome the natural revulsion of selling one's body."  *Id.*  This is not the case with any of the Plaintiffs.  Plaintiffs J and S were in vehicles in public.  They never touched the cameraman or were threatened or in any manner coerced to flash.

Witness 2 testified that the reason for going into the hotel room where they

disrobed was to obtain liquor.  (Doc. 189, Witness 2's statement, Exhibit F to Plaintiff B deposition).  That might be interpreted as exploitation of their desire to obtain alcohol, however, there is no evidence that they were coerced into prostitution in order to obtain the alcohol.  There is no testimony that they were told that in order to get a drink, they had to engage in a sex act.  Even Plaintiff V does not have a sufficient case.  Although she testified that Mr. Francis grabbed her hand and pulled her into the bedroom where he rubbed himself (Doc. 189, Plaintiff V deposition, page 240, lines 15-17), that does not constitute "coercion" as defined in the statute.  No one told her she could not leave, or blocked her ability to leave.  Indeed, she voluntarily followed the Girls Gone Wild crew to the hotel room and then, after meeting Mr. Francis, showed him where she lived.  Such behavior is evidence of voluntary behavior, not coercion.

## CONCLUSION

The Plaintiffs' claims are insufficient as a matter of law.  They voluntarily flashed their breasts in public.  This does not violate any law.  They never engaged in prostitution.  They were never forced into prostitution.  All their actions were done voluntarily.  They regret them, and now seek to create a case without foundation. Pursuant to *Lane*, *Breitfeller, Tilton*, and the other law cited above, summary judgment should be entered for Defendants as to Counts I, III, IV and V.

/s/ _Frederick L. Bateman, Jr._____
FREDERICK L. BATEMAN, JR.
Florida Bar No. 0398901
"The Chesley House"
401 E. Virginia St.
Tallahassee, Florida 32301
(850) 222-1020 - Telephone
(850) 222-2188 - Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2009, the foregoing document was served upon the following by electronic mail through the Court's CM/ECF system to the following:

Larry Selander
Rachael G. Pontikes
Duane Morris LLP
190 South LaSalle Street, Suite 3700
Chicago, IL 60603

D. Ross McCloy, Jr.
Robert A. Fleming
Harrison, Sale, McCloy,
    Thompson, Duncan & Jackson, Chtd.
PO Drawer 1579
Panama City, FL 32402

  /s/ Frederick L. Bateman, Jr.
Attorney