**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

| | |
|---|---|
| PLAINTIFF B, PLAINTIFF J, PLAINTIFF S, and PLAINTIFF V, <br><br> Plaintiffs, <br><br> v. <br><br> JOSEPH FRANCIS; MRA HOLDINGS, LLC, a California limited liability company, MANTRA FILMS, INC., an Oklahoma corporation, d/b/a "Girls Gone Wild;" and AERO FALCONS, LLC, a Delaware limited liability company, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )    Case No. 5:08cv79-RS-AK |

**INTERVENOR FLORIDA FREEDOM NEWSPAPERS INC.'S RESPONSE TO
PLAINTIFFS' MOTION TO PRESERVE ANONYMITY AT TRIAL AND
AND INCORPORATED MEMORANDUM OF LAW**

Florida Freedom Newspapers Inc. ("Florida Freedom"), which owns and operates the *News Herald*, in Panama City, Florida, respectfully responds in opposition to Plaintiffs' Amended Motion to Preserve Anonymity at Trial ("Amended Motion").

On December 8, 2009, this Court granted Florida Freedom's Motion to Intervene for the purposes of responding to Plaintiffs' previously filed original Motion to Preserve Anonymity at Trial (DE # 338)[1] and allowed Florida Freedom 10 days to respond to that motion (DE # 364.) Plaintiffs were subsequently granted leave to file their Amended Motion before Florida Freedom's response time had run, so Florida Freedom is responding to Plaintiffs' Amended Motion.

---

[1] "DE" refers to the numbered Docket Entries maintained in this proceeding.

The grounds for Florida Freedom's Motion are more fully set forth in the following Memorandum of Law.

## MEMORANDUM OF LAW

### INTRODUCTION

Florida Freedom has no pre-determined intent to publish Plaintiffs' identities in the *News Herald*. As Plaintiffs accurately point out, the *News Herald* has reported on the pre-trial proceedings in this case without mentioning the names of the Plaintiffs and has not previously intervened in the case to ask that Plaintiffs' identities be disclosed on the record.

But the stakes are different now. The case is going to trial. The trial will be controversial. At issue are sexually-related activities allegedly perpetrated against minors who are now adults. The facts and evidence supporting the parties' claims and defenses, and the credibility of the parties and witnesses, will be presented to the jury for decision.

Florida Freedom simply seeks to exercise its right to attend the trial, gather and assess the facts presented, and publish information from the trial that, *in its journalistic discretion*, it determines to be newsworthy. An important piece of that journalistic discretion is the decision to publish—or not publish—certain information from the trial, including the names of the Plaintiffs. It may well be that the *News Herald* chooses to continue its present practice of refraining from publishing the Plaintiffs' names. Or it could be that events at trial lead the paper to determine that the identities of the Plaintiffs are an important piece of the story. It bears repeating that the *News Herald* has not—and will not—make that decision until the events of the trial unfold. Its sole interest is to preserve its right to make that decision without governmental inference.

Plaintiffs' motion seeks to (1) require that Plaintiffs' identifying information be kept confidential during the course of the trial, and (2) prevent the public from attending any portion

of the trial in which Plaintiffs or witnesses are revealing any of Plaintiffs' identifying information.   (Amended Mot. at 9-10.)   The press and the public enjoy a common law presumption of openness to civil proceedings, including the right to know the real names of the parties to the litigation.  Plaintiffs' stated interest in preserving their anonymity—to protect them from embarrassment and humiliation in their present-day lives as adults—is simply not sufficient to outweigh the presumption of openness based on the record evidence cited by Plaintiffs.

## ARGUMENT

### THE PRESS AND THE PUBLIC HAVE A COMMON LAW RIGHT TO ATTEND THE TRIAL AND DISCLOSE THE IDENTITIES OF THE PLAINTIFFS

**I.      THE PRESS AND THE PUBLIC ENJOY A PRESUMPTION OF ACCESS TO CIVIL TRIALS.**

Throughout the evolution of both the English and American legal systems, "the trial has been open to all who care to observe." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564 (1980).  A trial courtroom is

> a public place where the people generally—and representatives of the media—have a right to be present, and where their presence historically has been thought to enhance the integrity and quality of what takes place.

*Id*. at 578.  Public trials promote the public's right to peaceable assembly and its confidence in the fair and proper administration of justice.  *See id*. at 564-78 (tracing the history of open access to trials); *Newman v. Graddick*, 696 F.2d 796, 801 (11th 1983) ("[O]pen proceedings may be imperative if the public is to learn about the crucial legal issues that help shape modern society. Informed public opinion is critical to effective self-governance.").

Although the Supreme Court has not expressly recognized a constitutional right of access to *civil* trials, the Eleventh Circuit recognizes a presumption of openness in civil proceedings in order to preserve the "the public's right to monitor the functioning of our courts" and to

"appreciate fully the often significant events at issue in public litigation and the workings of the legal system." *See Wilson v. American Motors Corp.*, 759 F.2d 1568, 1570, 1571 (11th Cir. 1985) (recognizing common law right of access in granting to motion to unseal record after jury trial and verdict in civil action) (internal citations and quotations omitted); *Newman*, 696 F.2d 796, 800-802 (recognizing constitutional right of access to access to future court proceedings regarding release or incarceration of prisoners); *see also Brown v. American Motors Corp.*, 960 F.2d 1013, 1015-1016 (11th Cir 1992) (granting motion to unseal record of pre-trial civil proceedings through summary judgment and subsequent settlement).

The presumption in favor of openness in civil trials necessarily extends to the right to know and disclose the identity of the parties using the courts.  In *Doe v. Frank*, 951 F.2d 320 (11th Cir. 1992), the Eleventh Circuit held that Plaintiffs could proceed anonymously only in "exceptional" cases where the plaintiff has a "substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Id.* at 323; *see also Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997) ("Identifying the parties to the proceeding is an important dimension of publicness."); *Doe v. Rostker*, 89 F.R.D. 158, 161 (N.D. Cal. 1981) (noting that the requirement in Fed. R. Civ. P. 10(a) that a complaint include "the names of all parties" serves to "protect the public's legitimate interest in knowing all the facts and events surrounding court proceedings").

The presumption in favor of openness, including the right to identify the parties, is at its peak when the case goes to trial.  As the Supreme Court has stated:

> [A] trial is a public event.  What transpires in the court room is public property.  There is no special perquisite of the judiciary which enables it, as distinguished from other institution of democratic government, to suppress, edit, or censor events which transpire in proceedings before it.

*Craig v. Harney*, 331 U.S. 367, 374 (1947); *see also Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 394 (1979) (Burger, C.J., concurring) ("I write separately to emphasize my view of the nature of the proceeding involved in today's decision. By definition, a hearing on a motion before trial to suppress evidence is not a *trial*; it is a *pre* trial hearing.") (emphasis in original). Indeed, the Eleventh Circuit has drawn a line recognizing a common law right of access to civil trials and judicial records but *not* to discovery materials and other material and other records that have not been submitted to the court.  *Compare Wilson,* 759 F.2d at 1571 (allowing access to records of trial) with *In re Alexander Grant & Co. Lit.*, 820 F.2d 352, 355 (11th Cir. 1987) (no common law right of access to discovery materials).  This distinction confirms the soundness of this Court's stated intention to revisit, "prior to trial," its initial decision allowing Plaintiffs to proceed anonymously.  (DE # 74.)

## II.  THE PLAINTIFFS' INTEREST IN ANONYMITY IS NOT SUFFICIENT TO OVERCOME THE PRESUMPTION OF OPENNESS IN CIVIL TRIALS.

The fact that Plaintiffs are attempting to restrain the press from reporting their identities during the course of their newsgathering activities at trial makes their Plaintiffs request for anonymity as impractical as it is inappropriate.  The Supreme Court has afforded the press wide latitude to report the identity of litigants obtained through public proceedings, public records, or other lawful means, and has struck down efforts to restrain, or punish, the press from doing so. *See, e.g., The Florida Star v B.J.F.*, 491 U.S. 524, 533 (1989) ("if a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order") (quoting *Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 103 (1979)); *Oklahoma City Publ'g Co. v. District Court in and for Oklahoma County*, 430 U.S. 308 (1977) (pre-trial order prohibiting press from reporting the name of juvenile defendant was

unconstitutional restraint where press had lawfully obtained juvenile's name at open detention hearing); *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) (state could not impose sanctions on the truthful publication of a rape victim's name obtained by the press through judicial records obtained from the a court clerk in an open court proceedings); *State v. Globe Communications Corp.*, 648 So.2d 110, 112-13 (Fla. 1994) (where press had obtained the name of plaintiff in William Kennedy Smith trial through "standard investigative techniques," Florida statute imposing criminal sanctions for identification of plaintiffs in sexual offense cases by "mass communications" held unconstitutional).

To the extent Plaintiffs are seeking to prohibit the press from reporting their identities—*however obtained*—the precedents cited above should foreclose that option.  In attending the trial, members of the press may well recognize one or more of the Plaintiffs by sight, or may be able to piece together their identities through the substance and context of testimony and evidence introduced at trial—even if the Court allowed Plaintiffs to proceed anonymously.  It also may be that members of the press could have previously obtained the identity of the one or more of the Plaintiffs through other publicly available or lawful means in the course of their standard investigative activities.   (Indeed, Plaintiffs suggested, in their original motion to preserve anonymity at trial, that their identities may have been previously disseminated.  *See* DE # 338, ¶¶ 12, 13 (citing fear of Plaintiff's identities being "republicized" and that they will "once again" be identified, and citing harm previously suffered from "the taping and publication of their images")).  The potential for the press to identify the Plaintiffs at trial by means other than Plaintiffs specifically disclosing their names on the record makes it especially difficult to fashion a rule that maintains the Plaintiffs' anonymity without restricting the press' right to identify the

Plaintiffs through normal reporting techniques and/or use of information gleaned during the trial or outside the trial.

In any event, the request for anonymity should be denied because Plaintiffs have not shown, on the record evidence in this case, that it has a "substantial privacy right" that outweighs the constitutional presumption of openness. In considering this question, the Eleventh Circuit considers *all* relevant factors on a case-by-case basis, including:

> (1) whether the plaintiffs are suing to challenge governmental activity;
>
> (2) whether prosecution of the suit compelled plaintiffs to disclose information "of the utmost intimacy"; and
>
> (3) whether plaintiffs were compelled to admit their intention to engage in illegal conduct, thereby risking criminal prosecution.

*Frank*, 951 F.2d at 323.

Neither the first nor the third factor weighs in favor of anonymity here. Plaintiffs are not challenging governmental activity but rather the conduct of an individual—and individual defendants have more reputational concern than governments when their conduct is challenged in a public forum. *See Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979). Plaintiffs also do not allege that they will be compelled to admit any intention to engage in illegal conduct that would expose them to criminal prosecution.

That leaves whether Plaintiffs will be compelled to disclose information of "utmost intimacy." The principal information at issue is that Plaintiffs engaged in sexual activities or performances when they were minors—and that certain of those activities were recorded on videotape. The parties differ as to the characterization of those sexual activities or performances. In essence, Plaintiffs say the Defendants coerced, cajoled, produced, promoted, directed and/or

marketed the sexual activities or performances of the Plaintiffs as children—in some cases by the payment of money and in at least one case, allegedly, by force.  (*See, e.g.*, DE #2, Compl. ¶¶ 33, 42, 61, 69, 75, 86).  The Defendants reject the contention that the sexual activities were "non-consensual" or amounts to "sex crimes" and further contend that two Plaintiffs who "flashed" the camera are not alleging that any sexual "activity" occurred.  (DE # 64).

Whether the Plaintiffs' allegations are characterized as voluntary sexual performances or coerced sexual offenses or exploitation, the record evidence cited by Plaintiffs is simply insufficient for Plaintiff to demonstrate that its privacy interest outweighs the presumption of openness is civil trials.

*First*, the core reason for Plaintiffs' request for anonymity is to prevent them from experiencing humiliation, fear and shame as women associated with the Defendants' videos.  (Amended Motion at 6, 8.)   Although Plaintiffs' concern for embarrassment is certainly understandable, the Eleventh Circuit has expressly held that "the fact that [a plaintiff] may suffer some personal embarrassment, standing alone, does not require the granting of his request to proceed under a pseudonym."  *Frank*, 951 F.2d at 324.  And although the events in question occurred when the Plaintiffs were minors, the central focus of Plaintiff's motion (including the supporting declaration of Dr. Lebowitz) is on the continuing or new embarrassment or shame that plaintiffs, *as present-day adults*, may feel if forced to reveal their identities as those who engaged in sexual conduct as minors.  As a result, any authorities aimed to protect minors from testifying about their sexual activities or abuse while they are still minors are not apposite.

*Second*, even when viewing the allegations as sexual assault or exploitation,[2] there are no decisions in the Eleventh Circuit holding that such allegations constitute matters of "utmost intimacy."  Other federal courts have, however, refused to allow plaintiffs to pursue similar claims anonymously.  Indeed, in cases with facts similar to this one—including allegations of sexual assault when the plaintiff was a minor and allegations against high-profile and controversial defendants—courts required the plaintiffs to disclose their identities.  *See, e.g.*, *Rose v. Beaumont Independent School District*, 240 F.R.D. 264 (E.D. Tex. 2007) (plaintiff who brought a civil suit against high school and individuals alleging that she was forced to engage in sexual activity as a minor must use her real name); *Doe v. Shakur*, 164 F.R.D. 359 (S.D.N.Y. 1996) (plaintiff who brought civil sexual assault action against famous hip-hop artist required to proceed under her real name); *see also Doe v. University of Rhode Island*, 1993 WL 667341 (D.R.I. 1993) (plaintiff who brought civil actual for sexual assault against college stemming from an assault at a party on campus required to reveal her identity).[3]

*Third*, Plaintiffs' allegations in this case are serious matters of public concern, especially when framed as allegations of child exploitation, prostitution, and assault.  The Defendants or

---

[2] The Eleventh Circuit's decision in *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678 (11th Cir. 2001), that abortion is a matter utmost intimacy is neither applicable nor relevant to factual allegations of this case.

[3] Although there was evidence *Rose* and *Doe v. University of Rhode Island* that the plaintiffs had previously disclosed their identities to the media or in related litigation, those specific facts were not singularly dispositive to the courts' analysis.  Rather, the courts focused on the nature of the plaintiffs' asserted privacy interest in avoiding the embarrassment associated with their allegations of sexual assault and balanced that asserted interest against the presumption of openness in civil proceedings.  Indeed, the *Rose* court applied the same multi-factor analysis used by the Eleventh Circuit in *Doe v. Frank*, including the rule that embarrassment or humiliation emanating from the allegations is not sufficient, by itself, to justify anonymity and that the identification of parties to a lawsuit is an important dimension of the public nature of court proceedings.  *See Rose*, 240 F.R.D. at 266-68.  In any event, there is some indication (*see infra* at 9) that Plaintiffs' identities also may have been previously disclosed in this case.

their businesses are known by much of the public.  The testimony by and concerning the Plaintiffs could very well affect the ultimate outcome of this case and the liability (if any) of the Defendants.  An open trial, with full disclosure of the parties, would allow the public to better understand and assess parties' competing claims and defenses—as well as their credibility—and to make informed judgments about the administration of justice in this case.  *See Southern Methodist Univ. Ass'n of Women Law Students*, 599 F.2d at 713 ("Basic fairness dictates that those among the defendants' accusers who wish to participate in this suit as individual party plaintiffs must do so under their real names"); *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mt. 1974) ("Lawsuits are public events and the public has a legitimate interest in knowing the facts involved in them.").

A final point.  Plaintiffs' citation to Local Rule 77.3(D) and Florida statutes affording anonymity to victims of sexual offenses do not bolster Plaintiff's arguments for anonymity here. Local Rule 77.3(D) refers to the court's power to issue an order governing "the seating and conduct in the courtroom of spectators and news media representatives," but it does not specifically contemplate the *exclusion* of certain persons from trial or anonymity.  Although the Court has the discretion to enter such an order, it must do so in a manner that does not violate the press or public's right to attend trials and identify the parties.  Similarly, state laws that make the identity of sexual offense victims confidential (F.S.A. § 98.16) and requires the courtroom to be cleared during their testimony (F.S.A §§ 92.56), are not applicable to federal courts.  Rather, federal law, including the decisions of the Eleventh Circuit and United States Supreme Court, are dispositive of the issues presented by Plaintiffs' motion.

## REQUEST FOR ORAL ARGUMENT

Florida Freedom respectfully requests that the Court hold oral argument on the Plaintiffs' motion.  Given the legal questions and factual contentions presented by the parties—and the lack of any dispositive authority in the Eleventh Circuit governing anonymity under the circumstances presented by this case—Florida Freedom believes that oral argument would allow the parties an opportunity to respond to any questions or concerns that the Court may have regarding its legal argument or its newsgathering activities.  Florida Freedom estimates that its oral argument would take no more than 30 minutes.

## CONCLUSION

For the reasons explained above, Freedom respectfully requests that this Court deny Plaintiffs' Amended Motion to Preserve Anonymity at Trial.

Respectfully submitted this the 4th day of January, 2010.

Respectfully submitted,

/s/ John A. Bussian
John A. Bussian
THE BUSSIAN LAW FIRM. PLLC
Florida Bar No. 298891
150 Fayetteville Street
Suite 1600
Raleigh, North Carolina 27601
Telephone:  (919) 829-4900
Facsimile:   (919) 829-2165

*Attorneys for Florida Freedom Newspapers Inc.*

OF COUNSEL:

/s/ Charles E. Coble
Charles E. Coble
N.C. Bar No. 25342
BROOKS, PIERCE, McLENDON,
  HUMPHREY & LEONARD, L.L.P.
150 Fayetteville Street
Suite 1600
P.O. Box 1800 (zip 27602)
Raleigh, NC 27601
Telephone:   (919) 839-0300
Facsimile:    (919) 839-0304

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 4, 2010, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which will send notification of such filing to the following:

Larry Selander                    Frederick L. Bateman, Jr.
Thomas G. Dent                    Bateman Harden, P.A.
Rachel G. Pontikes                401 Virginia Street
Duane Morris LLP                  Post Office Box 1454
190 South La Salle Street         Tallahassee, Florida 32302-1454
Suite 3700
Chicago, IL 60603

D. Ross McCloy, Jr.
Robert A. Fleming
Harris, Sale, McCloy,
 Duncan & Jackson, Chtd.
Panama City, FL 32402


/s/  Charles E. Coble_____
Charles E. Coble