IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CASE NO.:  5:08cv79

PLAINTIFF B; PLAINTIFF J;
PLAINTIFF S; and PLAINTIFF V,

Plaintiffs,

vs.

JOSEPH R. FRANCIS; MRA HOLDINGS,
LLC; MANTRA FILMS, INC.; and
AERO FALCONS, LLC,

Defendants.

**BRIEF OF AMICUS CURIAE THE NATIONAL CRIME VICTIM
LAW INSTITUTE IN SUPPORT OF PLAINTIFFS' AMENDED
MOTION AND MEMORANDUM IN SUPPORT TO PRESERVE
ANONYMITY AT TRIAL**

STATEMENT OF INTEREST

The National Crime Victim Law Institute (NCVLI) is a nonprofit educational organization located at Lewis & Clark Law School, in Portland, Oregon. NCVLI's mission is to actively promote balance and fairness in the justice system through crime victim-centered legal advocacy, education, and resource sharing. NCVLI accomplishes its mission through education and training; technical assistance to attorneys; promotion of the National Alliance of Victims' Rights Attorneys; research and analysis of developments in crime victim law; and provision of information on crime victim law to crime victims and other members of the public. In addition, NCVLI actively participates as amicus curiae in cases involving

crime victims' rights nationwide. This case involves the fundamental rights of all victims to privacy and to access the courts for redress of harm.

I.  victims' FUNDAMENTAL rights to privacy and to access the courts, coupled with the public's interest in seeing resolution on the merits, are the preeminent interests at stake in this case.

Plaintiffs seek to be permitted to continue to pseudonymously pursue the litigation involving the sex crimes committed against them, and to secure limited closure of the courtroom during their testimony and when footage of their victimization is played. The victims' rights to privacy and to access courts, particularly given the sensitive nature of sex crimes, when weighed against the negligible potential harm to the public's and defendants' rights, strongly counsel in favor of granting the victims' requests. Affording the victims these rights is in line with federal jurisprudence, victims' rights law, and sound public policy.

    A.  The Presumption of Open Access to the Courts Can be Overcome When Matters of a Highly Sensitive and Personal Nature are at Issue.

It is well-recognized that there is a presumption in favor of naming parties to a lawsuit stemming from the common law doctrine of open courtrooms. *See, e.g.,* F. R. Civ. P. 10(a) (providing, in part, "[i]n the complaint the title of the action shall include the names of all the parties."). This presumption is not absolute, however. Rather, courts "have increasingly recognized an exception to [the presumption of disclosure] in limited matters of a highly sensitive and personal nature." *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir.1992) (noting that presumption can be overcome in cases involving matters of "highly sensitive and personal nature"). *See also Raiser v. Church of Jesus Christ of Latter-Day*

*Saints*, 182 F. App'x 810, 811 (10th Cir. 2006) (same); *James v. Jacobson,* 6 F.3d 233, 238 (4th Cir. 1993) (same).

Courts routinely find that sex crime cases involve matters of a "highly sensitive and personal nature" that can warrant an exception to the presumptions of openness and disclosure. *See, e.g., Doe v. Eason,* No. Civ.A. 3:98-CV-2454, 1999 WL 33942103, *3 (N.D. Tex. Aug. 4, 1999) ("The sexual abuse of a child is a very private matter of a sensitive and personal nature that likely warrants party anonymity."); *State v. Burney,* 276 S.E.2d 693, 698 (N.C. 1981) (allowing court closure, and stating "[o]bviously, rape and other sexual offense cases involve matter of the most sensitive and personal nature"). *See generally Florida Star v. B.J.F.,* 491 U.S. 524, 542 (1989) (White, J., dissenting) ("It has been recognized that "short of homicide, [rape] is the ultimate violation of self." (quoting *Coker v. Georgia,* 433 U.S. 584, 597 (1977)).

The exception acknowledges what social scientists have long recognized – that victims experience re-victimization at the hands of the justice process. *See, e.g.,* Dean J. Kilpatrick & Randy K. Otto, *Constitutionally Guaranteed Participation in Criminal Proceedings for Victims: Potential Effects on Psychological Functioning,* 34 Wayne L. Rev. 7, 25 (1987) (describing victims' further victimization by the criminal justice system); *see also* Uli Orth, *Secondary Victimization of Crime Victims by Criminal Proceedings,* 15 Social Justice Research 313, 314 (2002) (noting that "secondary victimization" by the criminal justice system can negatively influence victims' "self-esteem, faith in the future, trust in the legal system, and faith in a just world."). Building on this research, courts have recognized that re-victimization and harm is particularly

acute, and extends beyond mere embarrassment and humiliation, when victims of sex crimes have their identities or other private information revealed. *See, e.g., Doe v. Firn*, No. CV065001087S, 2006 WL 2847885, *5 (Conn. Super. Ct. Sept. 22, 2006) ("To force the plaintiff to proceed without the protection of the pseudonym Jane Doe could only subject the plaintiff to additional psychological harm and emotional distress."); *United States ex. Rel. Latimore v. Sielaff*, 561 F.2d 691, 694-95 (7th Cir. 1977) ("The ordeal of describing an unwanted sexual encounter before persons with no more than a prurient interest in it aggravates the original injury."); *See, e.g., Globe Newspaper Co. Inc. v. Clerk of Suffolk County Superior Court*, No. 01-5588*F, 2002 WL 202464, *6 (Mass. Super. Feb. 4, 2002) ("[F]or many victims of sexual abuse, especially child sexual abuse, public revelation of the abuse, if not sought by them, victimizes them yet again."); *see generally* Nancy T. Gardner, *Cameras in the Courtroom: Guidelines for State Criminal Trials*, 84 Mich. L. Rev. 475, 500 (1985) ("Closing a trial may spare a witness, especially one who is a victim, embarrassment, harassment, or reprisal.").

Because sex crimes are matters of a highly sensitive and personal nature, and public disclosure of such information causes serious harm to victims, the presumption of open access that would generally require naming of plaintiffs is easily overcome and anonymous pleading is warranted.

  B. Victims' Fundamental Right to Seek Redress by Accessing Courts Without Sacrificing Their Fundamental Right to Privacy Allows Pursuit Under a Pseudonym.

Victims of sex crimes have two fundamental rights that can be severely impeded when matters of a highly sensitive and personal nature become public – the right to

privacy and the right to access the courts.

A victim's right to privacy is protected by the Constitution and by statute. While the Constitution does not explicitly mention the right to privacy, it is well-settled that such a right exists. *Roe v. Wade*, 410 U.S. 113, 152-153 (1973) (recognizing that "a right of personal privacy . . . does exist under the Constitution"). *See also Whalen v. Roe*, 429 U.S. 589, 599 (1977) (noting cases finding protected privacy interests include an "individual interest in avoiding disclosure of personal matters"). Additionally, under the Crime Victims' Rights Act (CVRA), victims are guaranteed "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8). Similarly, Florida's Constitution and statutes explicitly grant the right to privacy. Fl. Const. art I, § 23 ("Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."); Fl. Op. Att'y Gen. AGO 2003-56 (2003) (finding that the Florida Legislature's intent in passing the Crime Victims Protection Act was to protect sexual crime victims' identity in all judicial records from public dissemination).

This right to privacy encompasses a victim's interest in the non-disclosure of personal information. *See, e.g., Michigan v. Lucas*, 500 U.S. 145, 149 (1991) (recognizing a state's legitimate interest in protecting rape victims' privacy may outweigh defendant's constitutional right to confrontation); *Florida Star*, 491 U.S. at 536 (finding that "it is undeniable" that protecting the privacy of victims of sexual offenses is a "highly significant" state interest and that such an interest, under certain circumstances, may warrant the imposition of civil sanctions for the publication of the name of a rape victim);

*Bloch v. Ribar*, 156 F.3d 673, 686 (6th Cir. 1998) (concluding that "a rape victim has a fundamental right of privacy in preventing government officials from gratuitously and unnecessarily releasing the intimate details of the rape where no penalogical purpose is being served"); *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006) (holding that rape victim has a constitutionally protected privacy interest in videotape depicting her rape).

Notably, individuals also have a Constitutional right to access the courts, as protected by the First Amendment, the Fourteenth Amendment right to due process of law, and the Privileges and Immunities Clause. The threat to loss of privacy can result in a significant chilling effect on the reporting and pursuit of cases against sex offenders. The very real danger that the most intimate details of victims' lives and their victimization may be vetted in a public forum contribute to the fact that sex crimes are among the most under-reported and under-prosecuted in this country. See, e.g., Bonnie S. Fisher, et al., U.S. Department of Justice, The Sexual Victimization of College Women 23 (2000), U.S. Department of Justice, Bureau of Justice Statistics, National Crime Victimization Survey (2008), D.G. Kilpatrick, C.N. Edmunds & A.K. Seymour, Rape in America: A Report to the Nation (April 1992). Courts and legal scholars alike have recognized that violations of privacy rights implicate an individual's Constitutional right to access courts. *See, e.g., Globe Newspaper Co. Inc.*, 2002 WL 202464 at *6 (noting "[i]f the identit[ies] of these victims are not protected by the courts, then their access to the courts will be severely diminished, because they will not be able to turn to the courts for relief from or compensation of their emotional injuries without aggravating those same injuries."); Andrea A. Curcio, *Rule 412 Laid Bare: A Procedural Rule that Cannot Adequately Protect*

*Sexual Harassment Plaintiffs from Embarrassing Exposure*, 67 U. CIN. L. REV. 125, 155-56 (1998) ("There is nothing more intimate than childhood sexual abuse, and nothing as potentially devastating to a plaintiff than to have that abuse publicly exposed."). In essence, as Law Professor Jayne Ressler noted, the result of involuntary loss of privacy is a loss of access to the courts. See Jayne S. Ressler, *Privacy, Plaintiffs, and Pseudonyms: The Anonymous Doe Plaintiff in the Information Age*, 53 U. KAN. L. REV. 195, 219 (2004) (noting that potential plaintiffs may forfeit the opportunity to seek justice out of fear of disclosure and other would-be plaintiffs may not even initiate litigation).

To remedy the potential harm to victims' privacy and right to access courts, courts routinely allow victims to proceed anonymously in personal and sensitive matters. See, e.g., *Florida Star*, 491 U.S. at 527 n.2 (1989) (referring to rape victim by her initials, "in order to preserve [her] privacy interests") (internal citation omitted); *United States v. Clark*, 335 F. App'x 181 (3d Cir. 2009) (concluding that redaction of child pornography victims' names and their family members' names from victim impact statements was consistent with the provision of the CVRA guaranteeing the victim's right to be treated with respect for his or her dignity and privacy); *Gueits v. Kirkpatrick*, 618 F. Supp. 2d 193, 199 n.1 (E.D.N.Y. 2009) (stating that the court would not use the rape victim's name "out of respect for her dignity and privacy," as protected by the CVRA). See generally *United States v. Darcy*, No. 1:09CR12, 2009 WL 1470495, *1 (W.D.N.C. May 26, 2009) (directing government to refile Motion for Relief under the CVRA with "Jane Doe #1" substituted for the name of the victim to protect

the victim's privacy).

Allowing Plaintiffs to continue to proceed in this action by pseudonym is an appropriate method of protecting their rights to privacy and to access, particularly given the sensitive nature of the matters at issue.

    C.    The Public's Significant Interest in Resolution of Cases of a Sexual Nature Outweighs its Interest in Knowing the Victim's Identity.

Allowing pseudonymous plaintiffs does not significantly infringe upon the public's interest in open judicial proceedings.

> The public right to scrutinize governmental functioning . . . is not so completely impaired by a grant of anonymity to a party as it is by closure of the trial itself. Party anonymity does not obstruct the public's view of the issues joined or the court's performances in resolving them. The assurance of fairness preserved by public presence at trial is not lost when one party's cause is pursued under a fictitious name. These crucial interests served by open trials . . . are not inevitably compromised by allowing a party to proceed anonymously.

*Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981); *See also Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (noting in a case where a sexual assault victim was allowed to proceed under pseudonym that "although the public certainly has an interest in the *issues* Mary Doe's complaint raises, protecting her identity will not impede the public's ability to following the proceedings").

Accordingly, in balancing the victims' right to privacy against the public's right to access, numerous courts have found that the victims' right prevails. *See, e.g., Wilmink v. Kanawha County Board of Education*, No. Civ.A. 2:03-0179, 2006 WL 456021, at *3 (S.D. W.Va. Feb. 23, 2006) (allowing redaction of the names of sex abuse victims, stating

8

"[t]he events described in the documents represent some of the most painful chapters in the lives of the individuals whose information has been redacted. As a result, the competing interest of keeping this information private significantly outweighs the public's common law right of access"); *United States v. Madoff*, 626 F. Supp. 2d 420, 426 (S.D.N.Y. 2009) (finding that victims' privacy interests outweigh common law and constitutional rights of access where victims expressed wish to not have identities disclosed); *Cape Publications v. City of Louisville*, 147 S.W.3d 731, 735 (Ky. Ct. App. 2003) (upholding policy of redacting identifying information of sexual assault victims from publicly available incident reports upon finding that, *inter alia*, the public's interest in disclosure did not outweigh "the privacy interests of victims of sexual offenses, particularly when those privacy interests are coupled with a compelling public interest in insuring the physical safety of the victims and encouraging them to report sexual offenses without fear of exposure" (quoting Ky. Att'y Gen Open Records Decision, In re: The Courier-Journal/City of Louisville Division of Police, 02-ORD-36, February 22, 2002)).

In addition to the public interest in open courts exists a second public interest – seeing cases decided on the merits. *See, e.g., Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1073 (9th Cir. 2000). Allowing victims to proceed anonymously often protects this interest, because victims are more likely to proceed with a case through resolution on the merits if they may do so without threat of exposure. *See, e.g., Roe v. Providence Health System-Oregon*, Civil No. 06-1680-HU, 2007 WL 1876520 *4 (D.Or. June 26, 2007) (noting that the public had an interest in seeing a case decided on the merits, which might be undermined if plaintiffs were mandated to provide their true

identity and were thereby deterred from continuing the lawsuit); *L.H. A.Z., K.K, & D.R. v. Schwarzenegger*, No. CIV. S-06-2042 LKK/GGH, 2007 WL 662463, *18 (E.D. Cal. Feb. 28, 2007) (noting that "[w]hen the willingness to file suit is chilled by fear of retaliatory action, the public interest in seeing the suit move forward on its merits outweighs the public interest in knowing the plaintiffs' names").

Requiring the victims here to proceed with their real names would likely chill not only the victims in this case, but victims in future cases as well. Due to the highly public nature of this case, the victims' names and photographs are likely to be disseminated not only in-state but, via the internet, nationally and even internationally. Victims of similar abuse, seeing these victims' personal details on public display, may choose to remain silent rather than risk being subjected to the same re-victimization. Because of the chilling effect not only on the victims in the present case, but on all victims and the minimal effects on the public at large (particularly given the media coverage of the case),[1] the victims' interest in proceeding anonymously outweighs the public's interest in open courtrooms.

> D. Any Potential Prejudice to Defendant Caused by a Sexual Abuse or Assault Victim Proceeding Anonymously is De Minimus.

In determining whether plaintiffs may proceed by pseudonym, courts must also balance the plaintiffs' interest against potential prejudice to the defendants. *See, e.g., James*, 6 F.3d at 238 (unfairness to other party is a factor to consider when granting anonymous pleading); *Advanced Textile Corp.*, 214 F.3d at 1068 (finding the use of pseudonyms to be permissible "when the party's need for anonymity outweighs prejudice

---

[1] Florida Freedom Newspapers Inc.'s claim that plaintiffs are seeking to prohibit press from reporting their identities "however obtained" seems a factually overbroad and unsupported contention that this court should refrain from ruling upon without further development.

10

to the opposing party and the public's interest in knowing the party's identity"). Here, defendants are aware of the victims' identities; accordingly, there is no basis to assert that they will be prejudiced by being unable to mount an adequate defense. Unable to make this argument, defendants assert in conclusory fashion that they "[c]learly . . . will be prejudiced if this Court allows the plaintiffs to continue to hide their identities, and not least from the constant threat that some third party leak of that information could give the plaintiffs yet another way to collaterally attack them." Def.'s Mem. Opp. Mot. Protect and Maintain Pl.s' Anonymity 4. This "constant," yet hypothetical, "threat" is wholly insufficient to override the victims' constitutional and statutory rights to privacy and to access the courts.

### E. Victims Have a Substantial Need for the Partial Closure of the Courtroom.

As stated above, there is a presumption of open access to the courtroom. This presumption includes the literal openness of the courtroom and is based on the rationale that open courtrooms are helpful in ensuring that the accused is dealt with fairly. To that end, the Supreme Court has stated that "judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings." *Waller v. Georgia*, 467 U.S. 39, 46 n.4 (1984) (quoting *In re Oliver*, 333 U.S. 257, 270 (1948))). Similarly, the Supreme Court noted, "contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power." *In re Oliver*, 333 U.S. at 270. By opening courtrooms, witnesses are encouraged to come forward and perjury is discouraged. *Waller*, 467 U.S. at 46.

Because plaintiffs do not seek exclusion of the media from the courtroom, this policy rationale is not implicated because there will be "contemporaneous review in the forum of public opinion." *See generally Ex. rel. Latimore*, 561 F.2d at 694 ("Clearing the courtroom of spectators during the testimony of the complaining witness did not remove the trial proceedings from the forum of public opinion. Even in that part of the trial, the press and others with substantial interest in knowing what transpired were permitted to remain or to enter the courtroom.").

While defendants still have an interest in preventing partial closure of the courtroom, it is not as strong as their interest in preventing full closure. Recognizing this, the Eleventh Circuit (along with numerous other courts) has employed a more lenient standard in determining whether partial closure of a courtroom is warranted. *See Douglas v. Wainwright*, 739 F.2d 531, 533 (11th Cir. 1984) (noting that a "substantial" rather than a "compelling" justification for excluding spectators from the courtroom is necessary when the closure is only partial); *see also, Judd v. Haley*, 250 F.3d 1308, 1315 (11th Cir. 2001); *see also, e.g., United States v. Galloway*, 937 F.2d 542, 546 (10th Cir. 1991) (same); *United States v. Farmer*, 32 F.3d 369, 371-72 (8th Cir. 1994) (same).

The Eleventh Circuit has found a "substantial" justification for excluding spectators exists when necessary to "protect . . . the witness from unnecessary insult to her dignity . . . ." *Douglas*, 739 F.2d at 533. *Douglas* is in line with jurisprudence from numerous other courts. *See, e.g., Harris v. Stephens*, 361 F.2d 888, 891 (8th Cir. 1966) (allowing partial closure of courtroom during testimony of 23-year-old witness and noting that doing so "is a frequent and accepted practice when the lurid details of [a sex crime]

must be related by a young lady"); *United States v. Sherlock*, 962 F.2d 1349, 1357 (9th Cir. 1989) ("The protection of young victims of sex crimes from the trauma and embarrassment of public scrutiny justifies closing parts of a criminal proceeding."); *People v. Glover*, 457 N.E.2d 783, 784 (N.Y. 1983) (finding partial closure of courtroom appropriate during rape victim's testimony, due to its "embarrassing nature").

The facts of this case particularly favor partial closure because defendants have made no cognizable showing of harm if spectators are excluded from the courtroom and have made no specific argument in favor of closure of the courtroom in their Memorandum. *See* Def.'s Mem. Opp. Mot. Protect and Maintain Pl.s' Anonymity. In light of this lack of harm to the defendant, the substantial privacy interests of victims, and the very real risk of re-victimization for these the victims the victims' request should be granted.

## CONCLUSION

Victims should not be required to suffer a re-victimization by sacrificing their fundamental right to privacy in order to exercise their fundamental right to access courts, particularly when minor accommodations, such as anonymous pleadings and partial closure of the courtroom can remedy the situation. Given the young age of the victims now, their minor status at the time of the crime, the nature of the crime, the graphic nature of the evidence to be presented, the very public nature of this case, and the very real and very substantial possibility of re-victimization to these victims, this case presents a particularly compelling need for the minor accommodations of pseudonymous pleading and partial courtroom closure.

Respectfully submitted,

S/Clifford C. Higby, Esq.
Florida Bar No.: 0793809
Attorneys for Amicus National
 Crime Victims Law Institute
Bryant & Higby, Chartered
Post Office Box 860
Panama City, Florida 32402
(850) 763-1787

S/Margaret Garvin (OR Bar #04465; MN Bar #294226)*
Terry Campos (IL ARDC #6276411)
Alison Wilkinson (NY AS-6092)
National Crime Victim Law Institute at
Lewis & Clark Law School**
310 SW 4th Ave, Suite 540
Portland, Oregon 97204

*NCVLI acknowledges Clifford C. Higby as counsel for amicus curiae
**Law School is not amicus and is listed for affiliation purposed only

Counsel for Amicus Curiae National Crime Victim Law Institute

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 29, 2010, he caused the foregoing **Brief of Amicus Curiae the National Crime Victim Law Institute in Support of Plaintiffs' Amended Motion and Memorandum in Support to Preserve Anonymity at Trial** to be electronically filed with the Clerk of the Court, using the Court's CM/ECF system, which will send electronic notification of the filing to the below CM/ECF participant. Parties may access this filing through the Court's system.

Ross M. Babbitt (0072946)
rbabbitt@babbitt-lawfirm.com
700 W. St. Clair Avenue
Hoyt Block, Suite 300
Cleveland, Ohio 44113-1274
*Attorney for Defendants*

Larry Selander
Thomas G. Dent
Rachael G. Pontikes
Duane Morris LLP
190 South LaSalle Street, Suite 3700
Chicago, IL 60606

Wayne A. Mack
Duane Morris LLP
30 South 17th Street
Philadelphia, Pennsylvania 19103-4196

D. Ross McCloy, Jr.
Robert A. Fleming
Harrison, Sale, McCloy, Duncan & Jackson, Chtd.
Post Office Drawer 1579
Panama City, FL 32402
*Attorneys for Plaintiffs*

Frederick L. Bateman, Jr.
401 East Virginia Street
Tallahassee, Florida 32302
(850) 222-1020
Attorney for Joseph Francis

John A. Bussian
The Bussian Law Firm PLLC
Florida Bar No. 298891
150 Fayetteville Street
Suite 1600
Raleigh, North Carolina 27601

Charles E. Coble
N.C. Bar No. 25342
Brooks, Pierce, McLendon, Humphrey &l Leonard, L.L.P.
150 Fayetteville Street
Suite 1600
P.O. Box 1800 (zip 27602)
Raleigh, NC 27601
*Attorneys for Intervenors Florida Freedom Newspapers Inc.*

S/Clifford C. Higby, Esq.