## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**PLAINTIFF B; PLAINTIFF J;**
**PLAINTIFF S; and PLAINTIFF V,**

   **Plaintiffs,**

**vs.**                                        **CASE NO. 5:08-cv-79/RS-AK**

**JOSEPH R. FRANCIS; MRA HOLDINGS,**
**LLC; MANTRA FILMS, INC.; and AERO**
**FALCONS, LLC,**

   **Defendants.**

_____/

## ORDER

   Before me are Plaintiffs' Amended Motion to Preserve Anonymity at Trial

(Doc. 378) and Intervenor Florida Freedom Newspaper's response (Doc. 379).

Defendants' motion to adopt Florida Freedom's response (Doc. 382) is **granted**.

The National Crime Victims Law Institute's motion to file amicus brief (Doc. 411)

is **granted**.  I have reviewed both the amicus curiae brief (Doc. 412) and Plaintiffs'

supplemental memorandum (Doc. 414).

## BACKGROUND

   Plaintiffs brought this case against Defendants on five counts: sexual

exploitation under 18 U.S.C. §2251, intentional infliction of emotional distress, a

federal RICO claim, a Florida RICO claim, and a claim for coercion into

1

prostitution in violation of Florida Statutes §796.09.  The alleged incidents

occurred in 2000, 2002, and 2003.  Plaintiffs were all minors at the time of the

incidents giving rise to their claims, but had reached the age of majority prior to

filing suit.  Plaintiff B was 17 years old, Plaintiff J was 13 years old, Plaintiff S

was 15 years old, and Plaintiff V was 16 years old at the time of the incidents in

which they were each involved.  Plaintiffs B and S are now 25 years old, and

Plaintiffs J and V are now 23 years old.

On December 18, 2008, I granted Plaintiffs' Motion to Protect and Maintain

Plaintiffs' Anonymity (Doc. 57), but warned the parties that I would revisit this

decision prior to trial.  (Doc. 74).  The parties conferred and submitted a proposed

protective order.  (Doc. 85).  I entered a protective order on January 13, 2009,

governing identifying information of the Plaintiffs, which has remained in place

since that date.  (Doc. 88).

Plaintiffs' motion seeks to extend the protective order to the trial

proceedings.  To maintain Plaintiffs' anonymity, Plaintiffs seek to limit the

courtroom to essential parties and press only during the testimony of the Plaintiffs,

the testimony of witnesses revealing identifying information, and the viewing of

the films at issue.

## ANALYSIS

The United States Supreme Court has explicitly recognized a right of access to criminal trials, but has not considered whether that same right extends to civil trials. *See Richmond Newspapers , Inc. v. Virginia*, 447 U.S. 555, 100 S. Ct. 2814 (1980). The Eleventh Circuit also has yet to recognize a right of access to all civil trials, but has recognized a presumption of openness to both the public and the press in civil trials which pertain to the release or incarceration of prisoners and the conditions of their confinement. *Newman v. Graddick*, 696 F.2d 796, 801 (11th Cir. 1983). However, the Fifth Circuit has recognized a presumption of openness in civil trials. *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981); *Southern Methodist University Ass'n v Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979). Pursuant to *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir.1981), the decisions of the Fifth Circuit before September 30, 1981 are binding precedent on all federal courts within the Eleventh Circuit. Thus, *Stegall* and *Southern Methodist University* are binding precedent in this Court.

The Third and Sixth Circuits have also recognized a right of access to civil trials. *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1067 (3d Cir. 1984); *Brown v. Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1178-79 (6th Cir. 1983). Although the state of Florida has a statute specifically granting sexual

exploitation victims the absolute right of anonymity, there is no federal counterpart to this statute.  Fla. Stat. §847.01357(3).

The Eleventh Circuit based its decision in *Newman* to recognize a presumption of openness in civil trials of prisoner litigation in part on the reasoning of the Supreme Court in recognizing a presumption of openness in criminal trials.  I find that same reasoning also compelling in other federal civil trials.  A trial courtroom is a public place where people have a general right to be present, and what transpires in the courtroom is public property.  *Newman* at 800, citing *Richmond Newspapers* at 2828; *Craig v. Harney*, 331 U.S. 367, 67 S. Ct. 1249, 1254 (1947).  Public scrutiny of a trial enhances the quality and safeguards the integrity of the fact finding process, with benefits to both the defendant and to society as a whole.  *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 2619-20 (1982).  Public access to a trial fosters an appearance of fairness, thereby heightening public respect for the judicial process.  *See id.*  Public access to trials also permits the public to participate in and serve as a check upon the judicial process.  *See id.*  In addition, open proceedings are important for the public to learn about the crucial legal issues that help shape modern society, and an informed public opinion is critical to effective self-governance.  *See Newman* at 801.  Again, although these cases were focused on the issue of the openness of criminal trials, it was compelling to the Eleventh Circuit in establishing a

presumption of openness in civil proceedings relating to the release and incarceration of convicted prisoners.  I find these reasons equally compelling in civil trials in federal court.

In addition to these compelling reasons to keep a courtroom open during trial, there is a customary and constitutionally-embedded presumption of openness in judicial proceedings.  *Stegall* at 186.  A district court must balance the considerations calling for maintenance of a party's privacy against this presumption.  *Id.*  The Fifth Circuit in *Southern Methodist University* isolated three factors as characteristics common to those exceptional cases in which the need for party anonymity overwhelms the presumption of disclosure.  *Stegall* at 185.  The three *Southern Methodist University* factors are whether the suit (1) challenges government activity; (2) compels plaintiffs to disclose information "of the utmost intimacy;" or (3) compels plaintiffs to admit their intention to engage in illegal conduct, thereby risking criminal prosecution.  *Id.*

In the instant case, the government is not a party to this suit, nor will Plaintiffs be compelled to admit any illegal activities.  Therefore, the only *Southern Methodist University* factor pertinent to this case is whether prosecution of the suit compels Plaintiffs to disclose information "of the utmost intimacy." Plaintiffs S and J allege an incident that lasts less than a minute where they expose their breasts to a camera, which I previously ruled was not sexual conduct as a

matter of law.  (Doc. 400).  In addition, the incident with Plaintiffs J and S

occurred in public on the street, as opposed to Plaintiffs B and V who were in the

increased privacy of a hotel room.  Therefore, Plaintiffs J and S will not be

disclosing information of the "utmost intimacy" that requires anonymity.

Plaintiffs B and V will have to testify about sexual activity during the trial.

While what Plaintiffs B and V will have to disclose may be embarrassing, casual

and voluntary sexual activity is not the type of fundamentally personal issue that

warrants the imposition of anonymity like abortion, birth control, or religion.  *See*

*Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678 (1965); *Roe v. Aware*

*Woman Center for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001); *Stegall* at 186.

Indeed, the plethora of sex discrimination and sexual harassment cases litigated in

the Northern District of Florida--often with even more lurid details than this case--

have always remained open to the public and the plaintiffs are named.

Even sexual assault victims do not always proceed anonymously.  *See*

*Garcia v. Miami Beach Police Dept.,* 336 Fed. Appx. 858 (11th Cir. 2009); *Griffin*

*v. City of Opa-Locka*, 261 F.3d 1295 (11th Cir. 2001).  Furthermore, plaintiffs in

other factually similar civil cases, some involving the same Defendants as this

case, are named in the pleadings.  *See Tilton v. Playboy*, 554 F.3d 1371 (11th Cir.

2009); *Capdeboscq v. Francis,* 98 Fed. Appx. 988 (5th Cir. 2004); *Pitts v. Francis,*

2008 WL 2620746 (N.D. Fla.); *Brietfeller v. Playboy*, 2005 WL 2088418 (M.D.

Fla.); *Glaze v. M.R.A. Holdings, LLC,* 2003 WL 21981978 (M.D. Fla.); *Lane v. MRA Holdings, LLC,* 242 F. Supp 2d 1205 (M.D. Fla. 2002); *Gritzke v. M.R.A. Holding LLC,* 4:01cv495-RH (N.D. Fla. Mar. 15, 2002).  Many of these plaintiffs were also minors at the time of the incident but adults at the time of the civil litigation.  Thus, the matters Plaintiffs B and V must disclose in the current litigation do not rise to the level of "utmost intimacy" and do not meet this *Southern Methodist University* factor.

The *Southern Methodist University* factors were not intended as a rigid, three-step test of the propriety of party anonymity, but deserve considerable weight in the balance pitting privacy concerns against the presumption of openness in judicial proceedings.  *Stegall* at 185-86.  In addition to these factors, a judge should carefully review all the circumstances of a given case, and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns.  *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992), citing *Southern Methodist University* at 713.  In considering all the circumstances surrounding this case, particularly relevant to my decision is the passage of time since the incidents in question.  The incidents occurred in 2000, 2002, and 2003—seven to ten years ago.  The extreme temporal distance from the actual events giving rise to the case and the current ages of the Plaintiffs both weigh against continuing the anonymity order and keeping the courtroom closed during trial.  I

have reviewed the affidavit of Dr. Lebowitz, but find it is on balance conclusory and does not provide sufficient evidence that any potential effect on Plaintiffs outweighs the presumption of openness in the courtroom.

Other circumstances to be considered in the balancing test include whether there is a threat of violence to the plaintiffs because of the case and whether the plaintiffs are children. *Stegall* at 186. Neither of these circumstances is present in this case. Plaintiffs argue that there is potential for violence against the Plaintiffs if their names are disclosed at trial. However, the name-calling and insults written in the comments section of online news articles referred to by Plaintiffs is not the same as the physical violence that was contemplated in *Stegall.* There is no evidence that Plaintiffs might be physically harmed in any way should their identities be revealed. In addition, the Plaintiffs in the instant case are no longer children as the plaintiffs were in *Stegall.* The Plaintiffs are all adults in their mid-twenties and chose as adults to bring this lawsuit. The fact that Plaintiffs were minors at the time of the incidents is not decisive. When a plaintiff was a minor at the time of the incident but is now an adult, the district court returns to the balancing test required for any other plaintiff. *See Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005).

Plaintiffs assert that they will be humiliated if their names are publicized, but the fact that a plaintiff may suffer embarrassment, standing alone, does not require

the granting of her request to proceed under a pseudonym. *Frank* at 324. Again, any social stigma that might attach to the Plaintiffs in this case is no different than that in the sexual discrimination or sexual harassment cases common in this district, where the plaintiffs are always named. Furthermore, the mere filing of a civil action against a defendant may cause damage to their reputation and may also result in economic harm. Basic fairness dictates that those among a defendant's accusers who wish to participate in the suit as individual party plaintiffs must do so under their real names. *Southern Methodist University Ass'n of Women Law Students* at 713.

Plaintiffs also emphasize the difficulty they have had and will have in testifying, but this too does not compel closure of the trial. Although the events Plaintiffs B and V will have to recount in presenting their case may well be painful to recall, unfortunately this is the nature of many civil cases: tough testimony must be given. For example, few things are more painful to imagine than the death of a child, and yet plaintiffs in wrongful death cases are frequently forced to testify in detail about their child's death.

Furthermore, this is not a criminal case where my decision on anonymity might be different. The government is not pursuing this suit against Defendants. The Plaintiffs chose, as adults, to bring this suit. Plaintiffs' argument that discontinuing anonymity would lead to a "chilling effect" on reporting crimes and

a lack of punishment for child pornographers would be more persuasive in a

criminal context than in a civil suit.  In the parallel criminal prosecutions based on

the events at issue in this civil case, the identities of the victims, who did not

choose to bring the suit, were kept anonymous.  *See U.S.A. v. Mantra*, 5:06cr78;

*Florida v. Francis*, Case No. 03-001036 CFMA.  The Defendants have already

been subject to full criminal sanctions for the events that are the subject of this

case.  *Id.*  Reaching a different result on anonymity in a civil suit will not cause a

chilling effect on reporting crimes and punishing criminals in the criminal arena.

However, the non-party witnesses in this case who may have also been

victims in these events did not choose to bring this suit and do not have an interest

in its outcome.  Therefore, the protective order shall continue to remain in effect

for any witnesses who are not Plaintiffs.  These witnesses shall continue to be

referred to by a number or initial.  Prior to trial, the parties shall agree upon a code

to refer to these witnesses.

## CONCLUSION

Plaintiffs' motion and the amicus curiae brief filed by the National Crime

Victims Law Institute raise a number of policy arguments against leaving the

courtroom open in this trial.  However, my decision can only be based upon the

law.  Certainly, there are serious issues at play in this case, but neither Plaintiffs

nor the National Crime Victims Law Institute have provided any authority under

the law that requires me to close the courtroom and maintain the anonymity of the Plaintiffs.  The law does not allow the courtroom be closed unless the balancing test concludes that Plaintiffs' privacy outweighs the long-honored principle of open trials.  The Plaintiffs have not provided sufficient evidence to rebut this well-established presumption of openness.

**IT IS ORDERED:**

1.    Plaintiffs' motion for anonymity is **denied**.

2.    The protective order dated January 13, 2009, shall remain in effect until 8:00 A.M. C.S.T. the morning the trial begins,[1] when it will be terminated as to the four Plaintiffs.

3.    The protective order will remain in effect as to the anonymity of any non-party witnesses who were involved in the incidents.

**ORDERED** on February 5, 2010.

**/s/ Richard Smoak**
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**

---

[1] The trial is currently scheduled to commence on February 22, 2010.