IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE NORTHERN DISTRICT OF FLORIDA

PANAMA CITY DIVISION

| | |
|---|---|
| **Plaintiff B, Plaintiff J, Plaintiff S,** and **Plaintiff V,**<br><br>Plaintiffs,<br><br>vs.<br><br>**JOSEPH R. FRANCIS; MRA HOLDINGS, LLC, MANTRA FILMS INC.,** and **AERO FALCONS, LLC,**<br><br>Defendants. / | **Civil Action File No.: 5:08-cv-00079** |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION OF THE PLAINTIFFS' MOTION FOR A NEW TRIAL AND/OR TO ALTER OR AMEND THE JUDGMENT

In opposition to Plaintiffs' Motion for a New Trial filed pursuant to Federal Rule of Civil Procedure 59(a) and/or alter or amend the judgment against the Plaintiffs pursuant to Federal Rule of Civil Procedure 59(e) in regards to the claims against Defendant, Joseph R. Francis ("Francis') states:

### PRELIMINARY STATEMENT

The Plaintiffs are not entitled to a new trial, as they cannot demonstrate that the verdict rendered by the jury was against the great weight of the evidence or that upholding the verdict will result in a miscarriage of justice. An eight day jury trial was held on this matter March 28, 2011 through the early morning hours of April 7, 2011. Following approximately 12 hours of deliberation, the eight woman jury panel returned a verdict finding that the Plaintiffs were not entitled to a damage award. The Plaintiffs filed a timely motion for a new trial and/or to alter or amend the judgment entered in this matter. The substance of Plaintiffs' motion consists of

allegations that the verdict was not supported by the great weight of the evidence, a misunderstanding of Federal Rules of Evidence 703 and 705, as they pertain to expert cross examinations, complaints regarding Francis' actions at trial and mischaracterizations of the substance of Francis' closing, a closing in which Plaintiffs' counsel failed to contemporaneously object. The Plaintiffs' motion is without merit, not supported by the evidence, nor the pertinent law, and should be denied.

## MEMORANDUM

### A.  Standard for a Motion for New Trial

"A judge should grant a motion for a new trial when 'the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'". *See Johnson v. FFE Transp. Servs.*, 227 Fed. Appx. 780, 782 (11th Cir. Fla. 2007); *citing Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001). (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984) (internal quotation marks and punctuation omitted)); *see Rosenfield v. Wellington Leisure Prod. Inc.*, 827 F.2d 1493, 1497-98 (11th Cir. 1987) (using "great weight" formulation); *United States use of Weyerhaeuser Co. v. Bucon Constr. Co.*, 430 F.2d 420, 423 (5th Cir. 1970). "Because it is critical that a judge does not merely substitute his judgment for that of the jury, 'new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great--merely the greater--weight of the evidence.'" *See Lipphardt*, 267 F.3d at 1186 (quoting *Hewitt*, 732 F.2d at 1556). On a motion for a new trial based on the weight of the evidence, the court need not view the evidence in the light most favorable to the verdict. It may weigh the evidence and consider the credibility of the witnesses." *See United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir.

1985). Motions for new trials based on weight of the evidence are not favored. Courts are to grant them sparingly and with caution, doing so only in those really 'exceptional cases.'" *Martinez,* 763 F.2d at 1313. The Court must not overturn an evidentiary ruling unless the moving party establishes a substantial prejudicial effect. *See Judd v. Rodman*, 105 F.3d 1339, 1341 (11th Cir. 1997) (*citing King v. Gulf Oil Co.,* 581 F.2d 1184, 1186 (5th Cir. 1978)).

**B.     The Verdict Was Proper and Not Against the Great Weight of the Evidence**

In Plaintiffs' Motion for New Trial, they painstakingly summarize the evidence they presented at trial in subheadings "FACTS A-O". Plaintiffs argue that the record is saturated with evidence in favor of their case. This is the same evidence that the jury in this matter considered, for almost twelve hours, and determined that the Plaintiffs did not meet their burden of proof. This Honorable Court should not invade the province of the jury and disturb their verdict after they painstakingly heard this case, weighing the evidence throughout the night and into the early morning hours, where the Plaintiffs' request for damages was not supported by the evidence.

It is undisputed that prior to trial, Francis entered into both state and federal plea agreements that were relevant to the salient issues at trial. Specifically, due to Francis' federal plea, Francis was found liable for sexually exploiting Plaintiff B on summary judgment, reserving only the question of damages for trial. Dkt. 420 at 14. As to Francis' state court nolo contendre plea on the charge of procuring Plaintiff V into prostitution, it did not prove, as alleged by Plaintiffs, that Plaintiff V was coerced or forced into prostitution. A characterization with which the jury obviously disagreed, as they found that Plaintiffs V and B were not "coerced" into prostitution in Count IV of their verdict. Dkt. 613 at 9, 10.

It is also undisputed that Francis was an active manager of his corporations Francis reaped a profit from video sales. At trial, it was determined that GGW and Francis had been held

responsible and punished with an FCC compliance monitor, as well as $2.1 million in punitive court costs and fines. The Defendants presented testimony from Eric Deutsch regarding the safeguards since these allegations, including the use of the Pilot Ware program in conjunction with private investigators, implemented by Francis and GGW to prevent circumstances such as these from arising again.

      Although Plaintiffs claim that there was substantial and uncontroverted evidence that Francis caused Plaintiffs psychological harm, said assertion is grossly inaccurate. The record supports Francis' contention that Plaintiffs' fabricated psychological harm for the hopes of a substantial monetary damage award. Of course, the Plaintiffs testified "extensively as to how their lives fell apart after GGW." The only video published depicted Plaintiffs S and J flashing the cameras, laughing and smiling, and was clearly contradictory to their in court testimony regarding coercion and the amount of time they were displayed in the video. Not surprisingly, the mothers of S, J and B corroborated their daughters' testimony, as did others affiliated with the alleged victims. As to Plaintiff V, it was discovered during Francis' rebuttal case, that she had sought a ride with Francis in his Ferrari, after testifying that she had been forced to engage in sexual activity with him. Furthermore, Plaintiff V showed Francis where she lived and got his phone number so that she could contact him later. The testimony of Lebowitz was especially damaging, as it was learned the Plaintiffs had sought extensive treatment for a plethora of mental health and psychological issues, but never disclosed to anyone other than the Plaintiffs' attorneys and their hired expert the adverse affect that GGW had on their lives. Nor did the family members who had been previously involved with the therapeutic process disclose damage associated with the Defendants, particularly Plaintiff B's mother. Credibility of a witness is always a question for the jury, and as evidenced by the verdict, the jurors did not find their

testimony credible. Although the Plaintiffs provide a great deal of factual history in support of their Motion for New Trial, the analysis required by the jury was two prong, requiring both a finding of liability *and* damages.

Plaintiffs criticize Francis for not presenting a single witness or any other evidence to challenge the fact that GGW caused the Plaintiffs harm." The burden of proof is on the Plaintiffs. Plaintiffs' counsel characterizes the cross examination of Lebowitz as a "tactic" to present the "conclusions of other medical professionals who were not present in the courtroom, and whose opinions had not been validated or authenticated before the jury," such was not the case, as the issue of causation was certainly a relevant issue to the jury. Although Plaintiffs allege that Defendants relied on "phantom physicians", Lebowitz acknowledged that she evaluated and formed an opinion based on her interviews of the Plaintiffs, as well as their underlying histories. On direct, these pre-existing issues were not brought to light. Furthermore, it is certainly damaging to the Plaintiffs' case that although mental health treatment was sought, not a single one of these Plaintiffs disclosed anything related to GGW or damage suffered due to their involvement with GGW. Plaintiffs assert that "no one rebutted Lebowitz's opinion that it was unremarkable that GGW did not appear in the records." A rebuttal expert is not necessary when the Plaintiffs and the retained expert are simply, in and of themselves, not credible. They disclosed to counsel, and then to Lebowitz, who at trial, compared the Plaintiffs to combat veterans with PTSD. A contention obviously not agreed with by the jury. The jury is entrusted with determining credibility on the issue of causation and damages, and the burden rests solely with the Plaintiffs. The Plaintiffs should not be awarded a new trial based simply on the fact that the evidence supporting the Plaintiffs' claim of causation and damages was so weak as to not require a rebuttal expert, or because the Plaintiffs presented more testimony. It is not simply the

quantity of testimony, but the quality of such testimony which should govern whether a motion for new trial is with merit.

### C. It was Permissible for Defense Counsel to Elicit the Underlying Data and Facts Relied on by Lebowitz in Forming her Opinion on Causation and Damages Pursuant to Federal Rules of Evidence 703 and 705.

Plaintiffs' counsel objects to the questioning regarding the Plaintiffs' prior medical treatment, citing with specificity, several questions posed by Francis' counsel to Lebowitz. Plaintiffs' counsel did not object to a single one of the cited questions. Plaintiff claims to have "repeatedly" objected to this line of questioning. However, the assertion of "repeated" objections is a misstatement, as is evident in counsel's motion, wherein she references only three objections, during a course of questioning that took at least one hour, with the first objection occurring several minutes into the line of questioning. At trial, Plaintiffs' objections were overruled following a discussion of Federal Rules of Evidence 703 and 705 (2010). Federal Rules of Evidence 703 and 705 state, respectively:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.
>
> The expert may testify in terms of opinion or inference and give reasons therefore without first testifying to the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

Rule 703 and 705 of the Federal Rules of Evidence clearly permit the adverse party to question expert witnesses about documentation and records they relied upon in reaching their conclusions. In fact, the committee notes of Rule 703, 2000 amendment, clearly state "that nothing in this rule

restricts the presentation of underlying expert facts or data when offered by an adverse party." The restrictions of Rule 703 apply only to the party offering the expert testimony.

Plaintiffs also contend that the questioning regarding the underlying medical documentation reviewed by and relied on by Lebowitz was not permissible because they were not properly authenticated pursuant to Rule 901. Said argument is without merit, as defense counsel never attempted to admit the medical documentation into evidence. Counsel inquired, as is permitted under Rule 703, as to the underlying facts and data upon which Lebowitz based her opinion on causation and damages.

Plaintiffs also assert that it was improper to tell the jury the substance of inadmissible evidence. In support of Plaintiffs' argument, they cite to *United States v. Sanchez,* 176 F.3d 1214, 1222 (9th Cir. 1999). *Sanchez* dealt with an instance of prosecutorial misconduct where the prosecutor cross examined the defendant on issues relating to spousal privilege. Along the *Sanchez* line of cases is the *United States v. Hall,* 989 F.2d 711, 716 (4th Cir. 1993) case cited by the Plaintiffs, which asserts that a prosecutor may not attempt to "back door" in inadmissible evidence. Clearly, the circumstances of *Sanchez* and *Hall* are distinguishable from that of the present case, wherein the expert was cross examined on the foundation and basis of her opinion pursuant to FRE 703 and 705.

Plaintiffs also assert that the cross examination of Lebowitz regarding Plaintiffs' prior inconsistent statements and histories with other medical professional was "very prejudicial." Although it may have been prejudicial, Lebowitz was a designated expert, and testified as such. Cross examination regarding the Plaintiffs' interviews and prior treatment records upon which she based her opinion was certainly more probative than prejudicial, as it formed the basis of her opinion. The very nature of cross examination is inherently prejudicial as the goal is to impeach

a witness' credibility, especially one who appears in court to proffer an expert opinion. It should be noted that Lebowitz did not hesitate to attempt to bolster the Plaintiffs' credibility, asserting that their performance on the MMPI indicated honesty. Plaintiffs' counsel asserts that defense counsel was "able to set up a competing expert opinion" as to the ultimate opinion rendered by Lebowitz. Lebowitz testified that she reviewed the Plaintiffs' medical records and relied on them in reaching her conclusion, arguing that the inconsistencies were not unexpected based on the amount of shame felt by the Plaintiffs. The underlying medical opinions did not in fact compete with Lebowitz' ultimate opinion, as the records were completely devoid of any reference to the Defendants or trauma due to their participation in GGW. As such, it cannot be argued that there was some competing expert opinion, rather individual experiences and histories that were inconsistent with the Plaintiffs' and Lebowitz' collective testimony. It was left to Lebowitz to explain, in her expert opinion, the Plaintiffs' previous non-disclosure to numerous medical and psychiatric professionals, and subsequent initial disclosure to their attorneys, and then, ultimately, Lebowitz. Her failure to do so does not warrant a new trial.

### D. Francis' Actions did not Prejudice the Plaintiffs, nor do they Necessitate a New Trial

In Plaintiffs' Motion for New Trial, Plaintiffs allege that Francis disobeyed Court Orders during the discovery and pretrial phases of the case. The Court addressed these issues, and in its discretion, actually entered a default against three of the Defendants. It is inconceivable that the jury was aware of Francis' pretrial issues, and that somehow, it should render the verdict void. Furthermore, although Plaintiffs may disagree with the Court's pretrial sanctions, a Motion for New Trial is not the proper vehicle in which to argue the merits of the Court's pretrial rulings.

Plaintiffs argue that there were "multiple problems created by Francis appearing *pro se*", making a "mockery of the trial." *Plaintiffs' Motion for New Trial P. 3*. Plaintiffs' complaints

revolve around Francis' courtroom demeanor. Although his presentation of evidence was nontraditional, Francis is constitutionally entitled to represent himself. In representing himself, Francis was not permitted to break pre-trial rulings nor to inquire and illicit responses that would violate Federal Rule of Evidence 412. In fact, when the Court determined that Francis' line of questioning was inappropriate, he was held in contempt and sanctioned. With regard to the presentation of evidence, Francis failed to timely furnish Defendants Pretrial Catalog, and was precluded from calling any witnesses or presenting any exhibits not previously identified in the Plaintiffs' Pretrial Catalog.

Plaintiffs allege several instances where Francis was disruptive, "testifying at sidebar", and "distracting the jury." Arguably, it was not until the verdict was returned in the Francis' favor that the Plaintiffs, apparently, felt that they had somehow been prejudiced to the extent that a new trial was warranted. In fact, it certainly could be argued that it behooved the Plaintiffs to allow Francis to continue *pro se,* using their superior legal knowledge to the Plaintiffs' advantage. Certainly, had Francis' behavior been as inappropriate and as disruptive as alleged by Plaintiffs, it could have certainly damaged Francis' case beyond all repair.

### E.     Defendant's Closing Argument was not Improper

Defense counsel's closing argument lasted approximately 90 minutes, during which time, Plaintiffs' counsel argues that defense counsel "pulled out all the stops." Specifically, Plaintiffs allege that counsel focused on a lack of causation, Plaintiffs' personal responsibility, and invoking the "slut" stereotype. Once again, counsel cites to several instances of what they purport to be objectionable material. Of the instances cited, Plaintiffs' counsel failed to object, contemporaneously or otherwise.

Arguably, causation is relevant to a determination of damages. The testimony was clear that not only did the Plaintiffs not disclose to any medical professional other than Lebowitz, but they disclosed to their attorneys first. Plaintiffs' counsel oversimplifies the causation argument, ignoring the fact that these Plaintiffs had numerous underlying issues, from failing the ninth grade, to alcoholic parents, divorcing parents, to an abusive father, to the unexpected death of a mother or father, and preexisting underlying psychiatric issues. Although Lebowitz attempted to minimize these issues, to take them out of the causation equation, it simply was impossible to ignore.

With regard to "personal responsibility" and "slut" stereotyping, Plaintiffs characterize Francis' argument as "thinly veiled attempt to focus the jury on consent." Although Plaintiffs' counsel argues on pages 15 and 16 of their Motion that counsel was arguing "consent," the referenced citations are taken out of context. Specifically, these statements reference the in-court testimony of Dr. Costanzo, adolescent development and the element of coercion as alleged by the Plaintiffs. Although Plaintiffs' counsel would like to characterize these as objectionable comments on consent, such was not the case in the context of what was presented at trial, or perhaps an objection would have been made at trial. Furthermore, it is difficult to imagine that, in approximately 90 minute closing, the above-referenced comments, after eight days in trial, even if taken in the context alleged by Plaintiffs were so prejudicial as to warrant a new trial.

WHERFORE, the Defendant requests that this Honorable Court deny the Plaintiffs' Motion for New Trial and/or to Alter or Amend the Judgment.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24 day of May, 2011, provided a true and correct copy via hand delivery or facsimile and U.S. Mail to the following: Ross McCloy, Jr. and

Robert A. Fleming, 301 Magnolia Ave., Panama City, FL 32401; Rachel G. Pontikes, Thomas Dent, and Larry Selander 190 South LaSalle St. Ste 3700, Chicago, Illinois; Wayne Audrey Mack,, 30 South 17th Street, Philadelphia, PA, 19103; Daniel I. Small, 200 S. Biscayne Blvd Suite 3400, Miami, FL 33131; and Charles E. Cobie, 150 Fayetteville Street STE 1600, Raleigh, NC 27602.

VIRGA LAW OFFICES, P.A.

_____
Gerard M. Virga
Florida Bar No.: 0873071
Rachel Seaton-Virga
Florida bar No.: 0018347
231 East Fourth Street
Panama City, Florida 32401
(850) 215-2524 (telephone)
(850) 215-2534 (facsimile)
dd@virgalaw.com
Counsel for *Defendants*